**UNITED STATES of America, Plaintiff,**

**v.**

**Royal N. HARDAGE, et al., Defendants.**

**No. CIV–86–1401–W.**

United States District Court,
W.D. Oklahoma.

April 9, 1987.

---

Okl., Harold Himmelman and Karl S. Bourdeau, Beveridge & Diamond, Washington, D.C., R. Kinnan Golemon, Brown, Maroney, Rose, Barber & Dye, Austin, Tex., David D. Sigman, Exxon Corp. Law Dept., Houston, Tex., J. Kemper Will and Robert F. Hill, Hill & Robbins, P.C., Denver, Colo., James A. Calloway, Oklahoma City, Okl., Steven M. Morgan, Texas Instruments, Inc., Dallas, Tex., David A. Giannotti, McKenna, Conner & Cuneo, Los Angeles, Cal., Diane Goldschmidt, Oklahoma City, Okl., Jeffrey Martin, Hunton & Williams, Washington, D.C., Harry R. Palmer, Jr., Oklahoma City, Okl., Stephen F. Fink, James C. Morriss, III and Elizabeth A. Rabon, Thompson & Knight, Dallas, Tex., Jerome T. Wolf and Frank B.W. McCollum, Spencer, Fane, Britt & Browne, Kansas City, Mo., Barrow & Able, Houston, Tex., James A. Kirk and John M. Jameson, Kirk & Chaney, Oklahoma City, Okl., and Gregory L. Hennig, Able, Barrow & Able, Houston, Tex., for defendants.

F. Henry Habicht, II, Asst. Atty. Gen., and Bonnie A. Sullivan, Land and Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., Steven K. Mullins, Asst. U.S. Atty., William S. Price, U.S. Atty., Oklahoma City, Okl., Robert T. Lee and Anna Wolgast, Trial Attys., Environmental Enforcement Section, Land and Natural Resources Div., Dept. of Justice, Washington, D.C., for the U.S.

Steven K. McKinney, Monnet, Hayes, Bullis, Thompson & Edwards, Oklahoma City, Okl., Calvin Sawyier and Sidney Margolis, Winston & Strawn, Chicago, Ill., Fred S. Nelson, Claire V. Eagan and Michael D. Graves, Hall, Estill, Hardwick, Gable, Collingsworth & Nelson, Tulsa, Okl., Charles L. Berry and Molly Cagle, Vinson & Elkins, Houston, Tex., Robert D. Tomlinson and Kenneth McKinney, McKinney, Stringer & Webster, Oklahoma City, Okl., John D. White and Willard I. Boss, Watt, White, Gill & Craig, Houston, Tex., Mitchell D. O'Donnell, Savage, O'Donnell, Scott, McNulty & Affeldt, Gary W. Boyle, Boesche, McDermott & Eskridge, Tulsa,

## ORDER

LEE R. WEST, District Judge.

Plaintiff, United States of America, moves the Court to reconsider and to modify its Order of December 11, 1986 in the above-referenced case, pursuant to Local Rule 9, on the ground the Court misconstrues the limited protection sought by the United States' original Motion for Protective Order. The government states "the Court broadly addressed questions of record review not at issue in the Motion and concluded that a *de novo* review of Environmental Protection Agency's (hereinafter "EPA") remedy selection process under CERCLA is appropriate in this case." The Court directs the government to its brief in support of its original motion filed November 17, 1987, at pp. 4–12. The government argues in detail "judicial review of EPA's decision of an appropriate remedy is limited to the administrative record." As evidenced in the above-referenced pages, the government deemed the scope of judicial review an issue before the Court in its motion for protective order. The government now asserts the original

motion was sought for a "limited purpose," and accuses the Court of misconstruing the limited protection it sought in said motion. Such an accusation clearly is misplaced and clearly conflicts with the government's own conception of the relevant issues as articulated in its original brief. In its motion for reconsideration, the government seeks modification of this Court's determination *de novo* review of EPA's selected remedy is appropriate in the case at bar. Therefore, the issues before the Court on the original motion and on the instant motion include the scope of judicial review of an appropriate remedy for the Hardage site.

The government states it followed applicable administrative procedures in its selection of the preferred remedy and that defendants participated in the remedy selection process which resulted in a Record of Decision on November 14, 1986. The government filed its complaint in the instant case June 25, 1986. During a status conference before the Court September 3, 1986, it was unable to articulate the nature of relief it sought, when requested to do so by the Court. In fact, the government had only a vague conception of what type of remedy it might seek in the case. The Court strongly admonished the government's actions, which it filed without some working knowledge of the relief it was seeking, were premature and violated Rule 11, Fed.R.Civ.P. Subsequently, (over two months later) the Record of Decision was filed in this case. Presently, the government has failed to certify an administrative record to the Court. The government argues "it is only the Agency's decision making process in selecting a remedy that the United States sought to limit from discovery. Matters concerning each defendant's liability will be tried *de novo* by the Court." Plaintiff's brief at p. 2. Plaintiff states the Superfund Amendments and Reauthorization Act of 1986 limits this Court's review of the process by which EPA reached its remedy recommendation to the administrative record. The government further asserts the Court must adopt the preferred remedy unless the Court finds it is "arbitrary and capricious," citing Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601, et seq., § 113(j) of Superfund Amendments and Reauthorization Act of 1986, Public Law No. 99–499 (hereinafter "SARA").

The Court believes its Order of December 11, 1986 evidences the proper analysis and ultimate resolution of scope of judicial review of EPA's preferred remedy. The argument SARA

"restricts judicial review of issues related to the appropriate remedy for the Hardage site to an administrative record, and thus necessarily limits questions which may be asked at depositions, ignores the fact the Government seeks mandatory injunctive relief under § 7003 of the Resource Conservation and Recovery Act of 1976 ("RCRA"), 42 U.S.C. § 6973, to compel defendants to perform a remedy at the Hardage site. Section 7003 claims must be resolved in traditional trials by federal district courts after full discovery. In fact, as defendants state in their brief in opposition to plaintiff's Motion for Protective Order, p. 4 there are no reported cases in which a court confined its review of a RCRA § 7003 claim to an administrative record. Instead, courts consistently have decided such claims independently, allowing discovery, and imposing the burden of proof at trial on the Government. [citations omitted]."

Order of December 11, 1986, at p. 2.

"Similarly, § 106 injunction claims, pursuant to § 106 of CERCLA, also must be resolved in traditional trials by federal district courts after full discovery."

Order of December 11, 1986 at p. 3.

The Court considers the applicable sections of CERCLA and SARA and interprets those sections to allow *de novo* review of EPA's proposed remedy in the instant case. From the outset, the Court notes SARA became effective approximately four months subsequent to the date on which the complaint in the instant case was filed. As such, § 113(j) of SARA is inapplicable to the instant case. The Court believes retroactive application of such section is improper. For purposes of this mo-

tion, however, the Court analyzes the issue as though the Court condones retroactive application of SARA. Retroactive application in fact does not affect the Court's decision as to the scope of review issue.

Section 113(h) of SARA grants the Court jurisdiction

"to review any challenges to removal or remedial action selected under section 104, or to review any order issued under section 106(a), in any action ...

(5) An action under section 106 in which the United States has moved to compel a remedial action."

Such is the instant case. The government seeks an injunction pursuant to § 106 of CERCLA, to enjoin defendants to clean up the Hardage site. The provision of SARA, § 113(j) regarding judicial review, is at issue on the motion for reconsideration. That section states, in relevant part:

"(1) Limitation.—In any judicial action under this Act, judicial review of any issues concerning the adequacy of any response action taken or ordered *by the President* (emphasis added) shall be limited to the administrative record....

(2) Standard.—In considering objections raised in any judicial action under this Act, the court shall uphold the *President's decision* (emphasis added) in selecting the response action unless the objecting party can demonstrate, on the administrative record, that the decision was arbitrary and capricious or otherwise not in accordance with law."

■ Section 113(k) of SARA pertains to administrative record and participation procedures. It limits the selection and any judicial review of removal and remedial actions of the President to the administrative record. The statute clearly distinguishes between judicial review of the President's selection of such actions and judicial review of *proposed* remedies for sites which EPA asks a court to require defendants to implement. Judicial review is not limited to the administrative record in the latter case. Another relevant distinction the government fails to make concerns the judicial review limitation pertaining to the adequacy of any response action "taken or or-

dered *by the President*" as opposed to any response action ordered by a court. The latter is at issue in the instant case, and only the former is limited to the administrative record. The government and defendants agree the Court will issue the requested injunctive relief and order any compliance by defendants during the liability phase ·of trial. In the case at bar, the President will not order any response action taken. Clearly, an injunction ordered by this Court is not a response action "taken or ordered by the President." EPA has three alternate methods to pursue site cleanup: those cleanups implemented by EPA with Superfund monies, i.e., actions "taken" by the President pursuant to CERCLA § 104(a), 42 U.S.C. § 9604(a); SARA §§ 113(h), 113(j)(1); issuance of administrative orders by EPA, i.e., actions ordered by the President pursuant to CERCLA § 106(a), SARA §§ 113(h), 113(j)(1); and finally, the method chosen by EPA in the case at bar, an action filed with a federal district court pursuant to CERCLA § 106, for court-ordered injunctive relief. Actions requesting court-ordered injunctive relief are not covered in SARA § 113(j)(1). The government's citations to SARA §§ 113(j)(2) and (3), establish the "arbitrary and capricious" standard applies to actions reviewed on an administrative record. However, those sections are inapplicable to the instant action, as the court-ordered injunction method is not subject to review on the basis of an administrative record. Similarly, SARA § 113(k)(2)(C), which the government cites as authority for its proposition EPA's selection process for a response action does not include an adjudicatory hearing, applies only to procedures in EPA proceedings. It does not, and cannot, dictate procedures in federal district courts when EPA files a complaint pursuant to § 106 of CERCLA to implement its selected remedy, through equitable injunctive relief. Accordingly, § 113(j) is inapplicable to the instant case.

■ Subsequent to SARA's enactment, the language of § 106 of CERCLA remains unchanged. It still recognizes the inherent equitable power of courts to "grant such

relief as the public interest and the equities of the case may require." 42 U.S.C. § 9606(a). Absent express Congressional mandate to the contrary, courts retain "traditional equitable discretion." *Weinberger v. Romero-Barcelo,* 456 U.S. 305, 319, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982) ("A major departure from the long tradition of equity practice should not be lightly implied." Statutes should be construed "in favor of that interpretation which affords a full opportunity for equity courts to treat enforcement proceedings ... in accordance with their traditional practices, as conditioned by the necessities of the public interest which Congress has sought to protect.") *Hecht Co. v. Bowles,* 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754 (1944). *Porter v. Warner Holding Co.,* 328 U.S. 395, 398, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946). In fact, a clear and valid legislative command must be identified to restrict this inherent equitable power, either in the plain language of the statute or in authoritative legislative history. *CIA. Petrolera Caribe, Inc. v. ARCO Caribbean, Inc.,* 754 F.2d 404, 416 (1st Cir. 1985) (citing *Porter v. Warner Holding Co.,* 328 U.S. 395, 398, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946); *Weinberger v. Romero-Barcelo,* 456 U.S. 305, 312, 102 S.Ct. 1798, 1803, 72 L.Ed.2d 91 (1982). Accordingly, this Court retains its inherent equitable power to "grant such relief as the public interest and the equities of the case may require." 42 U.S.C. § 9606(a).

The government argues "a narrow reading of § 113(j) [SARA] would produce the illogical result that the standard and scope of review of the agency's remedy determination, which may be at issue in either a § 106 or § 107 action, would differ radically depending upon whether the government, standing in the shoes of responsible parties, initiated and financed the remedy, or whether the government sought to compel responsible parties to conduct and finance the remedy." Brief of government at p. 6. The Court disagrees. Such a result is not "illogical;" it affords greater deference to remedies which the government chooses to implement and finance itself, by restricting review thereof to the administrative record, and favors defend-

ants when the government seeks to force its own remedy upon them, to implement and to finance, by allowing *de novo* review in such cases. In the former, the government has more incentive accurately to research and to analyze all available remedies, initially, and to propose the most cost effective remedy, since the government's own monies will finance the implementation thereof. In the latter, the government has less incentive to inquire into cost-effectiveness issues, since private defendants, (as opposed to the government) initially will finance costs of clean-up. *De novo* review of any recommended remedy which the government seeks to impose on private parties effectively ensures its diligence in consideration of all issues, including cost-effectiveness, since the government knows the higher standard of review of such recommendation (*de novo* ) will be applied by the Court.

Plaintiff cites two district court cases from other districts, *United States v. Western Processing, Inc.,* No. C–83–252–M (W.D.Wash. Feb. 19, 1986) [Available on WESTLAW, DCT database] and *United States v. Ward,* 618 F.Supp. 884, 900 (E.D. N.C.1985), presumably as controlling authority for its bald assertion the Court's rejection of the rationales articulated in those two cases, and its determination EPA's chosen remedy for the Hardage site is subject to *de novo* review, "is at odds with SARA as well as with applicable case law preceding SARA." Government's brief at p. 9. This Court has distinguished the two cases to which the government devotes considerable discussion, in support of the government's proposition review herein should be confined to an administrative record. *See* Order of December 11, 1986 at pp. 4–5, regarding *United States v. Ward,* 618 F.Supp. 884, 900 (E.D.N.C.1986); and *United States v. Western Processing Co.,* No. C–83–252–M (W.D.Wash. Feb. 19, 1986) [Available on WESTLAW, DCT database].

The government argues SARA merely clarifies existing law applicable to the review of § 106 injunction claims. Sufficient case law establishes, pre-SARA, that § 106 claims should be resolved after full dis-

covery and trial on remedy and liability issues. When viewed as clarifying existing law, SARA supports the Court's retention of equitable powers to grant whatever relief it deems necessary, pursuant to plain language on the face of CERCLA § 106, since SARA fails to alter such language. *United States v. Conservation Chemical Corp.,* 106 F.R.D. 210, 214–16 (W.D.Mo. 1985); *United States v. Price,* 688 F.2d 204, 208, 211, 214–15 (3rd Cir.1982); *United States v. Ottati & Goss, Inc.,* 630 F.Supp. 1361 (D.N.H.1985).

A recent case which the United States Supreme Court allowed to stand, by its denial of certiorari, recognizes CERCLA provides for a full hearing when EPA implements a remedy and thereafter brings a suit to recover its costs. *Lone Pine Steering Committee v. EPA,* 600 F.Supp. 1487, 1499 (D.N.J.1985), *aff'd,* 777 F.2d 882, 887 (3rd Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986), (denying interested parties the right to obtain "pre-enforcement" judicial review of remedies selected by EPA on the ground CERCLA provides for a full hearing when EPA implements a remedy and thereafter brings a suit to recover its costs, stating "The reimbursement trial ... will permit presentation of adequate evidence for careful and exacting study by the Court.") *See also J.V. Peters & Co. v. Ruckelshaus,* 584 F.Supp. 1005, 1010–11 (N.D.Ohio 1984); *aff'd,* 767 F.2d 263, 266 (6th Cir.1985); *Wagner Electric Corp. v. Thomas,* 612 F.Supp. 736, 747 (D.C.Kan.1985) (stating "To limit a reviewing court to the administrative record, at least where no hearing is required, would surely not be a 'meaningful manner' of affording aggrieved parties an opportunity to be heard.")

The government criticizes the Court's citations, as conclusive, of previous actions in which EPA failed to certify a record or to seek record review, such as *United States v. Conservation Chemical Corp.,* 106 F.R.D. 210, 214–216 (W.D.Mo.1985) and *United States v. Vertac Chemical Corp.,* 588 F.Supp. 1294, 1295 (E.D.Ak.1984). Plaintiff argues "the issue of record review was not before those Courts and accordingly was not ruled upon by those Courts...."

A Record of Decision selecting an appropriate remedy for the Hardage Site has been finalized and, the administrative record supporting the Agency's decision is being compiled and will be certified to the Court." Government's brief at p. 9, n. 6. The citations of the Court in its Order of December 11, 1986, are in fact proper. The Court finds EPA's late filing of a Record of Decision and its continuing failure to certify an administrative record to the Court, in the unlikely event the Court were to base its review thereon, constitutes the proverbial "too little too late," (EPA's Record of Decision was filed almost five months after it filed the complaint in the instant case). Accordingly, cases in which EPA failed to certify a record seem quite appropriate, since EPA has failed to certify a record in the instant case as well. Promises of future action, amidst present inaction, do not suffice when the Court is confronted with a substantial issue (scope of review) that necessarily affects public interests as well as interests of defendants who may be required to pay in excess of seventy million dollars in site cleanup costs.

■ The government does not dispute this Court's authority to review *de novo* any EPA recommendations regarding its action brought pursuant to § 7003 of the Resource Conservation and Recovery Act of 1976 ("RCRA"), 42 U.S.C. § 6973. RCRA claims must be decided in traditional trials after full discovery, not on the basis of an administrative record. *United States v. Waste Industries, Inc.,* 734 F.2d 159, 168 (4th Cir.1984); *United States v. Price,* 688 F.2d 204, 208, 211, 214–15 (3d.Cir.1982); *United States v. Conservation Chemical Co.,* 106 F.R.D. 210, 214–216, 235 (W.D.Mo. 1985); Order of December 11, 1986 at p. 3. Plaintiff seeks to enjoin defendants from engaging in such activities as handling, storage, treatment, transportation or disposal of a solid or hazardous waste, which may present an imminent and substantial endangerment to health or to the environment, and other appropriate injunctive relief pursuant to § 6973. Plaintiff's only argument regarding the § 7003 claim is "Since the Administrator's finding of a pos-

sible imminent and substantial endangerment is common to both RCRA § 7003 and CERCLA § 106, defendants seek to impermiss[i]bly open the CERCLA administrative record to scrutiny in contravention of the express terms of SARA and applicable case law ... [and] ignor[e] the distinction between a determination of a possible 'imminent and substantial endangerment' and the Agency's selection of a remedy to abate hazardous conditions, including an 'imminent and substantial endangerment,' at the Site." Government's brief at p. 10. The Court disagrees. The government's attempt to limit judicial review of any aspect of its recommended remedy to record review under the pretense any deviation from its position is contrary to CERCLA and SARA, and thereby to deny defendants an opportunity for *de novo* review on the RCRA claims, reeks of unfairness. Even if the Court were to find *de novo* review inappropriate under CERCLA and SARA, it remains available as to RCRA claims. The Court cannot deny *de novo* review of RCRA claims on the basis "the Administrator's finding of a possible imminent and substantial endangerment is common to both RCRA Section 7003 and CERCLA Section 106." As defendants state on p. 4 of their brief, "the presence of a CERCLA claim cannot be used to prevent the discovery and trial of remedy issues under RCRA."

■ The government next argues the Administrative Procedures Act (hereinafter "APA"), 5 U.S.C. §§ 551, et seq., §§ 701, et seq., applies in the case at bar and therefore the availability of *de novo* review of agency actions is restricted. 5 U.S.C. § 706(2)(E), (F). The government cites an APA provision which establishes certain agency actions must be set aside if arbitrary, capricious, or an abuse of discretion or not in accordance with law. 5 U.S.C. § 706(2). The "substantial evidence" standard of review for agency actions covered by the APA applies only when a public adjudicatory hearing is involved. 5 U.S.C. §§ 554, 556, 557. The government argues this standard of review is inapplicable in the instant case, since § 113(k)(2)(C) of SARA expressly states an adjudicatory

hearing is unavailable. It then attempts to buttress its argument for an "arbitrary and capricious" standard of this Court's review by stating "the Tenth Circuit has uniformly applied an 'arbitrary and capricious' standard of review to informal agency action." The government cites several decisions holding various agency actions were not subject to *de novo* review. In fact, as informal agency action, the APA is inapplicable, for informal adjudication is non-APA adjudication, in which ad hoc agency rules apply and due process is to be tested by the courts.

The APA contains provisions which prescribe procedures for formal rule making (§§ 553, 556 and 557), formal adjudication (§§ 554, 556 and 557), and informal rule making (§ 553). However, no comparable APA section exists which establishes procedures for informal adjudication. Section 553(e) does establish a right to notice and explanation under circumstances therein described, and thereby provides for a particular type of informal adjudication and prescribes two procedural ingredients. Sections 553(e) and 558(c) also provide for informal adjudications in two other instances, neither of which applies in the instant case.

Although "informal procedures constitute the vast bulk of administrative adjudication and are truly the lifeblood of the administrative process," (Report of the Attorney General's Committee on Administrative Procedure 35 (1941)), the Attorney General's Committee's recommended bill did not contain provisions to govern informal adjudication. The Committee chairman, Dean G. Acheson, stated in his testimony before the Subcommittee of the Senate Committee on the Judiciary, "[I]t would be an impossible problem to tackle if the committee undertook to set up machinery for dealing with all of the informal procedures of all the organizations; it just cannot be done." Hearings Before Subcom. of Comm. on the Judic. on S.674, S.675 and S.918, 77th Cong. 1st Sess. 804, 806 (1941).

■ The Court agrees with W. Gardner and I. Greenberger that: "This field ... [of

judicial review of informal agency action] is still unsettled and developing and probably will be for a long time to come. The diversity of informal governmental action will prevent generalization, and the complexity of contemporary issues will induce action." W. Gardner and I. Greenberger, *Judicial Review of Administrative Action and Responsible Government*, 63 Geo.L.J. 7, 20 (1974). The introductory phrases of the APA, § 554(a), state: "This section applies ... in every case of adjudication required by statute to be determined on the record after opportunity for an agency hearing...." The precise words "on the record" need not be used to trigger the APA. The United States Supreme Court clearly rejected such an extreme reading even in the context of rule making under § 553 of the APA. *Seacoast Anti-Pollution League v. Costle*, 572 F.2d 872, (1st Cir.1978), *cert. denied*, 439 U.S. 824, 99 S.Ct. 94, 58 L.Ed.2d 117 (1978), citing *U.S. v. Florida East Coast Ry. Co.*, 410 U.S. 224, 245, 93 S.Ct. 810, 821, 35 L.Ed.2d 223 (1973); *United States v. Allegheny-Ludlum Steel Corp.*, 406 U.S. 742, 757, 92 S.Ct. 1941, 1950, 32 L.Ed.2d 453 (1972). The issue turns on the substantive nature of the hearing Congress intended to provide. *Seacoast Anti-Pollution League v. Costle*, 572 F.2d 872 (1st Cir.1978), *cert. denied*, 439 U.S. 824, 99 S.Ct. 94, 58 L.Ed.2d 117 (1978). The Court's analysis should determine whether the EPA proceedings which selected a preferred remedy were conducted in order "to adjudicate disputed facts in particular cases" or "for the purposes of promulgating policy-type rules or standards." *Marathon Oil Co. v. Environmental Protection Agency*, 564 F.2d 1253 (9th Cir.1977).

Under the factual setting of the instant case, comparisons to the scope of review for sanctions involving violations of the Food Stamp Act, Federal Communications Commission decisions to allot new frequencies, Economic Development Administration studies regarding competing enterprises, the Forest Service's issuance of a stop order to unauthorized construction and refusal to renew a lease of public lands to an individual by an administrative agency, which the government seeks, individually, to analogize to the case at bar on pp. 6 and 11 of its brief, fail to persuade the Court. The similarities of the above summarized agency decisions to the agency action and inaction involved in the clean up of a hazardous waste site are few, if any. The economic effect such decisions have upon the public and upon defendants or claimants who sought review therein cannot be compared to the economic effect of a hazardous waste site cleanup on the public, *a fortiori* on the numerous defendants upon whom the government seeks to impose costs of implementation of its "preferred remedy."

■ Since § 113(k)(2)(C) of SARA expressly rejects any adjudicatory hearing, ("... an adjudicatory hearing is unavailable,") no adjudication is "required by statute to be determined on the record after opportunity for an agency hearing...." APA § 554(a). Accordingly, the government's arguments pertaining to the APA are of no relevance, since the APA does not apply herein. The Court's conclusion on p. 5 of its December 11, 1986 Order that EPA's action was informal adjudication does not conflict with its observation on p. 4 of the same Order that "The only agency action involved is EPA's action in filing the instant cause of action, whereupon EPA placed adjudication of all issues under the jurisdiction of this Court." In fact, both statements are correct. The only agency action prior to filing a record of decision November 14, 1986, was EPA's action in filing the instant case, whereupon it placed adjudication of all issues under the jurisdiction of this Court. Subsequent to the filing of its complaint, apparently EPA conducted informal adjudication which resulted in a record of decision, although EPA has failed to certify an administrative record of any informal adjudication proceedings.

Plaintiff next argues review based upon the administrative record does not violate defendants' due process rights, asserting "this extensive process exceeds the requirements of due process mandated by the Supreme Court." Government brief at p. 14. The government attempts to analogize the

instant case to *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), wherein the Supreme Court held an evidentiary hearing was not required prior to termination of disability payments.

The Supreme Court considered three factors in *Mathews*, in its analysis of whether due process was afforded to the claimant by the agency: 1) the private interest affected by the official action; 2) the risk of erroneous deprivation of such interest through procedures used, and the probable value, if any, of additional or substitute procedural safeguards; 3) the public interest, including the governmental function involved and fiscal and administrative burdens additional or substitute procedural requirements entail. 424 U.S. at 335, 96 S.Ct. at 903, government's brief at p. 15. The government argues the remedial decision in the case at bar is similar to the decision to terminate disability benefits in *Mathews*, in that each decision turns upon reports of specialists, and the reliability and worth of such reports do not, in large part, rest on credibility and veracity. The government reasons, as did the Supreme Court in *Mathews*, "the potential value of an evidentiary hearing, or even oral presentation to the decisionmaker," is insignificant. Government's brief at p. 15; 424 U.S. at 344, 96 S.Ct. at 907. The government further asserts it provided the defendants herein more extensive procedures than the claimant in *Mathews* was afforded, and that the requirements of due process do not mandate additional procedural rights in this case. Defendants were "provided with a full panapoly of procedural safeguards," they were afforded an opportunity to comment on EPA's proposed remedies and evaluation of remedial alternatives, had timely and meaningful opportunity to submit comments on EPA's proposed remedies, and did so, according to the government. Defendants were not, however, provided an opportunity to cross-examine witnesses. The government argues the value of cross-examination, when the remedy selection is based on scientific and technical determinations, is small.

Although the government states defendants were afforded a "full panapoly of pro-

cedural safeguards," (government's brief at p. 16) it appears the only "safeguards" defendants in fact received were the opportunity to file written comments on EPA's Feasibility Study and the opportunity to attend a public meeting regarding the proposed remedy. Even the claimant in *Mathews, supra,* was afforded greater procedural safeguards. That claimant was immediately advised of potential adverse governmental action, and was given access to the government's files. In the instant case, EPA was aware of potentially adverse action against certain parties as long as four years prior to its filing of the original Hardage action. *See* Government's Answer filed November 7, 1986, to ¶¶ 10 and 16 of Defendant's Counterclaim. Additionally, in *Mathews*, the Agency had promulgated detailed regulations which constituted notice to claimants of elaborate procedures for submission of evidence, opportunities for reconsideration, and subsequent judicial review. This type of notice was not given to defendants herein. Defendants state on p. 10 of their brief "at no time during the so-called administrative process employed by EPA were the defendants given adequate notice that EPA intended to assemble an administrative record that would be the basis for judicial review." In *Mathews*, the individuals were given sufficient time to develop independent factual evidence to respond to evidence offered by the government; in the instant case, defendants were given forty-five days to investigate conditions at the Hardage site and develop data to prove the conclusions in EPA's Feasibility Study were incorrect. Defendants state it took them almost six months and more than $1.5 million to investigate and to gather sufficient data to evidence any alleged shortcomings in EPA's Feasibility Study. Defendants' brief at p. 11.

EPA failed to maintain a file of relevant investigation documents at or near the site, as required by § 113(k)(1) of SARA, for situations in which EPA elects to act administratively to obtain a site remedy. Defendant's brief at 11. (However, the Court notes EPA now has elected to pursue a

court ordered remedy, as opposed to acting administratively to obtain a site remedy.) Accordingly, defendants had no chance to examine a file of relevant investigation documents which may in the future comprise an administrative record.

█ It appears to the Court, as defendants state, "The government's analysis of the process to which the Defendants are 'due' focuses upon the wrong forum: EPA instead of this Court." Defendant's brief at p. 8. The government is not using an administrative process within EPA to implement a remedy at the site; it has chosen to invoke the jurisdiction of this Court for that purpose, in its exercise of equitable jurisdiction and discretion to determine the appropriate remedy. When applied to the procedural safeguards afforded defendants herein, the *Mathews* three prong test weighs in favor of *de novo* review of EPA's preferred remedy. Clearly, the first prong, the private interest that will be affected by the official action, is great. The defendants found liable will be ordered to implement a remedy which may exceed $70 million in cost. The second prong, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, suggests a scope of review less than *de novo* would be grossly unfair to defendants.

The Court concurs with defendants the "most flagrant denial of due process" is EPA's failure to establish an independent staff or tribunal to evaluate issues raised by defendants. The same EPA staff persons who performed the remedial investigation, considered the options, and formed the feasibility study and selected the preferred remedy also evaluated the comments and issues raised by other parties, including defendants. Due process dictates separation of the prosecutorial function from the decision-making function. EPA failed to comply with this mandate of due process. *Morrissey v. Brewer*, 408 U.S. 471, 485–486, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

The third and final consideration in *Mathews* is the public interest. This Court must decide whether the public interest is best served by an "arbitrary and capricious" standard of review of an administrative record, which has yet to be certified to the Court, or by *de novo* review of the remedy proposed by EPA and a similar review of the merits of defendants' proposed remedy. The Court believes the public interest is better served by the latter. The Court notes a full trial and discovery on liability issues alone will involve tremendous financial expenditures and will demand considerable resources and time. In fact, a trial regarding the remedy will impact the public significantly more than the necessary liability trial.

Accordingly, for all the reasons articulated herein, the Court finds plaintiff's Motion for Reconsideration and Modification of the Order of the Court dated December 11, 1986, is HEREBY DENIED.