**UNITED STATES of America**

v.

**BELL PETROLEUM SERVICES, INC., et al.**

**No. MO–88–CA–05.**

United States District Court, W.D. Texas, Midland–Odessa Division.

June 22, 1989.

Peter Mounsey, Harry Kelso, Environmental Enforcement Section, Land & Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Kevin M. Beiter, Cox & Smith Inc., San Antonio, Tex., Michael T. Morgan, Morgan, Ward, Leeton, P.C., W.B. Browder, Stubbeman, McRae, Sealy, Laughlin & Browder, Inc., Midland, Tex., Donald R. Taylor, Akin, Gump, Strauss, Hauer & Feld, San Antonio, Tex., Marc R. May, Marc R. May, P.C., Odessa, Tex., Marc A. Sheiness, Jose A. Berlanga, Hirsch, Glover, Robinson & Sheiness, Houston, Tex., Stewart McKeehan, Browning & McKeehan, P.C., W.R. Barnes, Odessa, Tex., Max E. Wright, Cotton, Bledsoe, Tighe & Dawson, Midland, Tex., James E. Ross, Ross & Newman, Houston, Tex., D.W. Dudley, Odessa, Tex., for defendants.

ORDER

BUNTON, Chief Judge.

BEFORE THIS COURT is the Motion of the Plaintiff for a Ruling as to the Appropriate Scope and Standard of Review of the Selection of Response Actions for the Odes-

sa Chromium I Site and for an Order Limiting the Scope of Discovery. Responses were timely received by the Court from the Defendants. Having considered the Motion, the relevant authorities and the Defendants' Responses, the Court is of the opinion that Plaintiff's Motion should be GRANTED in part. The standard of review for the Environmental Protection Agency's ("EPA's") selection of response actions for the Odessa I Chromium site shall be the arbitrary and capricious standard. The scope of discovery in the action shall not be limited to the administrative record, however, but discovery deadlines shall not be extended.

## BACKGROUND

The Odessa Chromium I Site (the "Site") is a chromium-contaminated site listed on the "National Priorities List," the EPA's list of most seriously-contaminated hazardous substance sites in the nation. The site is located northwest of Odessa, Texas; with boundaries at 48th Street to the North; Brahma Street to the West; 37th Street to the South and West Country Road to the East.

The Texas Department of Water Resources and its successor agency, the Texas Water Commission ("TWC"), investigated citizen complaints concerning contaminated wells in the vicinity of the Site from 1978 to 1983. This investigation identified the property at 4318 Brazos Street as a potential source of contamination.

In September of 1984, EPA authorized a response action at the Site pursuant to its authority under Section 104(c) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. Section 9604(c). On the same date, EPA entered into a cooperative agreement with the State of Texas pursuant to which the State was to undertake forward planning at the Site and to perform a remedial investigation, feasibility study and remedial design work for the Site.

The remedial investigation revealed that the disposal of chromium waste at 4318 Brazos Street has severely contaminated the underlying "sole source" aquifer with chromium, a "hazardous substance" as that term is defined in CERCLA. 42 U.S.C. Section 9601(14). Water in this aquifer is consumed by residences and businesses beyond the Odessa City limits.

Pursuant to the cooperative agreement with EPA, the State conducted a feasibility study that examined a number of alternatives for decontaminating the underlying aquifer and safeguarding the drinking water supply of persons in nearby residences who drew water from this aquifer. Because of the immediate threat to some citizens in the area of the Site, a "focused" Feasibility Study was instigated by EPA and TWC to provide an alternative water system. Pursuant to the cooperative agreement, the State of Texas designed and constructed the extension of the city water system as recommended by the feasibility study.

While the focused Feasibility Study was underway, work continued on the Feasibility Study for the remediation of the contaminated aquifer. This work was finalized in early 1988. The State of Texas is currently designing the final remedy for the Site. This remedy requires the following actions to address the chromium-contaminated groundwater: (1) demolition and disposal of the building at 4318 Brazos Street; (2) extraction of contaminated groundwater from the Trinity Aquifer; (3) electrochemical treatment of groundwater; (4) reinjection of treated groundwater; and (5) monitoring the Site for a minimum of thirty (30) years. Upon completion of that design work, EPA intends to order the Defendants to implement the remedy as designed, pursuant to its authority under Section 106 of CERCLA, 42 U.S.C. Section 9606.

In terms of the procedural background of this case, Defendant Bell Petroleum Services, Inc. ("Bell") filed for protection under Chapter 11 of the Bankruptcy Code on November 11, 1986. On February 13, 1987, the United States, as a creditor and on behalf of EPA, filed a Proof of Claim against Bell in the Bankruptcy Court seeking reimbursement of costs incurred by

EPA pursuant to Section 104 of CERCLA, 42 U.S.C. Section 9604, at the Site.

Bell objected to the original Proof of Claim filed on behalf of EPA, and this Court subsequently granted the joint motion of the United States and Bell for withdrawal of reference of that dispute, pursuant to 28 U.S.C. Section 157(d), so that the determination and valuation of the EPA claim would be decided by this Court. A December 12, 1988 trial date in Case No. MO–88–CA–05 was set but later continued pending the filing of the present action against Bell and other potentially responsible parties. On December 5, 1988, this Court entered an Order consolidating Case No. MO–88–CA–300 under the former case number, MO–88–CA–05.

## DISCUSSION

■ It is the contention of the Plaintiff that the Court's review of the EPA's response action decision on the Site should be limited to the administrative record using an arbitrary and capricious standard. In support of its contention, Plaintiff directs the Court's attention to the 1986 Amendments to CERCLA [1]. Section 113(j) (1)–(3) state in pertinent part:

(1) **Limitation**

In any judicial action under this chapter, judicial review of any issues concerning the adequacy of any response action taken or ordered by the President shall be limited to the administrative record. Otherwise applicable principles of administrative law shall govern whether any supplemental Materials may be considered by the court.

(2) **Standard**

In considering objections raised in any judicial action under this chapter, the court shall uphold the President's decision in selecting the response action unless the objecting party can demonstrate,

on the administrative record, that the decision was arbitrary and capricious or otherwise not in accordance with law.

(3) **Remedy**

If the court finds that the selection of the response action was arbitrary and capricious or otherwise not in accordance with the law, the court shall award (A) only the response costs or damages that are not inconsistent with the national contingency plan, and (B) such other relief as is consistent with the National Contingency Plan [sic].

42 U.S.C. Section 9613(j)(1)–(3) (Supp.1989).

Defendants Chromalloy American Corporation and Sequa Corporation (jointly referred to as "Sequa") contend that because they are contesting the constitutionality of the informal administrative process followed by EPA, a de novo review is required to provide them with their due process rights. The Court is of the opinion that the constitutional question goes to the procedure established and followed by EPA for determining the appropriate response measures to the Site. The Court is of the opinion that a review of those procedures to determine whether they meet constitutional muster is wholly separate and distinct from a review by this Court of the actual decision made by the EPA with regard to the necessary clean-up measures to be implemented at the Site. Because the constitutionality issue is not properly before the Court, the Court declines to rule thereon at this time [2].

Defendant Bell contends that a de novo review of the administrative record is in order since the EPA is essentially seeking equitable relief and, as in the *Hardage* case, a claim for equitable relief warrants a de novo review. In *Hardage*, the EPA brought its action under Section 106 of CERCLA and Section 7003 of the Resource Conservation and Recovery Act of 1976

---

**1.** These amendments are also known as the Superfund Amendments and Reauthorization Act ("SARA").

**2.** The Court is of the opinion that a Motion to Remand this cause to the EPA for further investigation, notice to all potentially responsible parties and a second hearing would suffice to

bring the issue of constitutionally incorrect procedure before the Court. At that time the Court may review the procedures applied to the administrative proceedings in the case, and, upon finding of constitutionally violative defects therein, remand the case for further review of the record.

("RCRA"), 42 U.S.C. Section 6973. The court pointed out the traditional equitable powers held by a Federal Court can only be restricted by "clear and valid legislative command." Further, the court distinguished between judicial review of the President's selection of response actions and judicial review of *proposed* remedies for sites which EPA asks a court to require defendants to implement. The court also drew a line between judicial review of any response action taken or ordered *by the President* and a response action ordered by the Court, finding that "[t]he latter is at issue in the instant case, and only the former is limited to the administrative record." *United States v. Hardage*, 663 F.Supp. 1280 (W.D.Okla.1987).

In direct conflict with the holding in *Hardage* is the *United States v. Seymour Recycling Corp.*, 679 F.Supp. 859 (S.D.Ind. 1987) wherein the Court stated

> Given the express language of Section 113(j) providing for review on the administrative record *"in any judicial action under this Act,"* the absence of legislative history supporting ... Defendants' view, and the need to interpret Section 113(j) in a consistent manner with Section 121 and the general statutory scheme of CERCLA, the Court concludes that Section 113(j) was intended to govern judicial review of remedy selection in all cases, including Section 106 injunctive cases.

*Id.* at 863.

Initially, it is important to note that the present action was originated under Section 107 of CERCLA, a factor which makes the *Hardage* case immediately distinguishable. In Plaintiff's Brief in support of its Motion for a Ruling on the Appropriate Scope and Standard of Review, however, Plaintiff states that "[u]pon completion of that design work, EPA intends to order the defendants to implement the remedy as designed, pursuant to its authority under Section 106 of CERCLA, 42 U.S.C. [Section] 9606."

Having reviewed the CERCLA statute and the cases dealing with the scope of review, this Court is of the opinion that the distinctions made in the *Hardage* case are hypertechnical and inconsistent with the plain meaning of the statutory language. This Court is of the opinion that the language of Section 113(j) applies to any proceedings under CERCLA, and that the appropriate standard of review in this case is the arbitrary and capricious standard.

■ Having so ruled, the Court is, however, aware that the discovery process is meant to give litigants an opportunity to leave no stone unturned and, in order to do so, they must be allowed to uncover evidence which may or may not be admissable at trial. In order for the Defendants to determine whether the administrative record is complete, some evidence as to the documents, etc. considered by the EPA is relevant. *See, e.g.: 1902 Atlantic Ltd. v. Hudson*, 574 F.Supp. 1381 (E.D.Va.1983); *County of Suffolk v. Secretary of Interior*, 562 F.2d 1368 (2nd Cir.1977); *National Resources Defense Council, Inc. v. Train*, 519 F.2d 287 (D.C.Cir.1975); *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)[3].

The Plaintiff complains that open discovery would slow the recovery process in contravention of the purpose of CERCLA. This Court does not intend to slow the wheels of justice any more than they already have been in the case at bar and shall allow liberal discovery with one caveat: the deadlines for discovery set in this Court's Order of April 13, 1989 shall, under no circumstances, be extended. Accordingly,

IT IS ORDERED that Plaintiff's Motion for a Ruling as to the Appropriate Scope and Standard of Review of the Selection of Response Actions For the Odessa Chromi-

---

**3.** The Court notes that all of the above-cited cases were adjudicated pre-SARA. The Court is of the opinion, however, that the reasoning therein is still applicable to the case at bar; in order for the Defendants to make an informed inquiry into the arbitrariness of the EPA's response actions, they must be accorded the opportunity to investigate what evidence went into the record.

um I Site is hereby GRANTED. The Scope of Review shall be governed by Section 113(j) of SARA.

IT IS FURTHER ORDERED that the Plaintiff's Motion for an Order Limiting the Scope of Discovery is hereby DENIED.