### In re ACUSHNET RIVER & NEW BEDFORD HARBOR: PROCEEDINGS RE ALLEGED PCB POLLUTION.

#### Civ. A. No. 83–3882–Y.

United States District Court,
D. Massachusetts.

Oct. 10, 1989.

See also, 722 F.Supp. 893.

Ellen M. Mahan, William D. Brighton, Environmental Enforcement Section, Land and Natural Resources Div., Washington, D.C., Martha Sosman, Chief, Civil Div., U.S. Attys. Office, Boston, Mass., for U.S.

Lee Breckenridge, Chief, Nancy Preis, Asst. Attys. Gen., Environmental Protection Div., Dept. of the Atty. Gen., Boston, Mass., for Commonwealth of Massachusetts.

Charles C. Bering, Office of Regional Counsel, U.S. EPA–Region I, Boston, Mass., Alice Crowe, OECM–Waste, LE 134S, U.S. EPA Headquarters, Washington, D.C., for U.S. E.P.A.

Hugh Schratwieser, Office of General Counsel, Washington, D.C., for National Oceanic and Atmospheric Admin.

Daniel J. Gleason, Mary K. Ryan, Brian T. Kenner, Nutter, McClennan & Fish, Boston, Mass., for AVX Corp.

Paul B. Galvani, Roscoe Trimmier, Jr., Ropes & Gray, Boston, Mass., for Aerovox, Inc.

David A. McLaughlin, Michael J. McGlone, McLaughlin & Folan, New Bedford, Mass., for Belleville Industries, Inc.

Verne Vance, Jr., Richard W. Benka, Foley, Hoag & Eliot, Boston, Mass., for Cornell Dubilier Electronics Co., Inc.

John R. Quarles, Howard T. Weir, Morgan, Lewis & Bockius, Washington, D.C., for Federal Pacific Elec. Co.

Robert J. Muldoon, Jr., Daniel B. Winslow, Barbara O'Donnell, Sherin & Lodgen,

Boston, Mass., for Aerovox, Inc. (Insurance Litigation).

William M. Savino, Gary D. Centola, Rivkin, Radler, Dunne & Bayh, Uniondale, N.Y., Cynthia J. Cohen, Michael B. Bogdanow, Meehan, Boyle & Cohen, Boston, Mass., for Firemen's Fund Ins. Co.

James L. Ackerman, Day, Berry & Howard, Boston, Mass., Thomas J. Groark, Jr., Day, Berry & Howard, Hartford, Conn., for Aetna Cas. and Sur. Co.

John P. Ryan, Sloan & Walsh, Boston, Mass., for Hartford Ins. Co.

Michael S. Greco, Lisa D. Campolo, Hill & Barlow, Boston, Mass., Timothy C. Russell, T. Andrew Culbert, Drinker, Biddle & Reath, Washington, D.C., for Lumbermen's Mut. Cas. Co. and American Motorists Ins.

Stephen J. Paris, Michael F. Aylward, Morrison, Mahoney & Miller, Boston, Mass., for CNA Ins. Co. and Reliance Ins. Co.

Roger E. Warin, Stephen A. Fennell, Anita G. Raby, Steptoe & Johnson, Washington, D.C., for Highlands Ins. Co.

Wm. Gerald McElroy, Jr., John T. Harding, Jr., Zelle & Larson, Waltham, Mass., for Employers Ins. of Wausau.

James P. Whitters, III, Gaston & Snow, Boston, Mass., for Liberty Mut. Ins. Co.

Bert J. Capone, Deborah S. Griffin, Peabody & Arnold, Boston, Mass., for Home Ins. Co. and Lexington Ins. Group.

Robert F. Corliss, Robert A. Romero, Jr., Corliss & Romero, Boston, Mass., Mary Ann D'Amato, Paul Moran, Mendes & Mount, New York City, for Underwriters at Lloyd's.

Pamela C. Slater, Allan E. Taylor, Taylor, Anderson & Travers, Boston, Mass., for First State Ins. Co.

Timothy P. Wickstrom, Tashjian, Simsarian & Wickstrom, Worcester, Mass., for Mission Ins. Co.

Calum B. Anderson, Parker, Coulter, Daley & White, Boston, Mass., for Northbrook Excess & Surplus Ins. Co.

Carl K. King, Gayle M. Merling, Goldstein & Manello, Boston, Mass., for EPEC, Inc.

David P. Rosenblatt, Burns & Levinson, Boston, Mass., for Plating Technologies.

Erik D. Olson, Counsel National Wildlife Federation, Washington, D.C., for National Wildlife Federation.

## MEMORANDUM OF DECISION CONCERNING THE SCOPE AND STANDARD OF REVIEW OF THE SOVEREIGNS' RESPONSE PLAN [1]

YOUNG, District Judge.

Before the Court are motions by the sovereigns for pretrial rulings on the scope and standard of judicial review with respect to agency decisions on appropriate remedial action under subsection 107(a)(4)(A) of the Comprehensive Environmental Compensation and Liability Act ("CERCLA"), 42 U.S.C. sec. 9607(a)(4)(A) (1982 & Supp. V 1987); the Massachusetts Oil and Hazardous Material Release Prevention and Response Act, Mass.Gen.L. ch. 21E, sec. 5 (1986); and under former provisions of the Massachusetts Clean Waters Act, Mass.Gen.L. ch. 21, sec. 27(14) (1986). The United States seeks a ruling that any review of the decisions of the Environmental Protection Agency ("EPA") should be limited to the administrative record and that EPA's decisions and actions be upheld unless they were arbitrary and capricious under CERCLA and the National Contin-

---

**1.** This memorandum continues the discussion of the pre-trial issues raised in these partially consolidated cases. It is intended to be read in conjunction with the Court's earlier decisions concerning jurisdiction and parties, *In re Acushnet River & New Bedford Harbor Proceedings Re Alleged PCB Pollution,* 675 F.Supp. 22 (D.Mass. 1987) ("*Acushnet I*"); the right to jury trial, *In re Acushnet River & New Bedford Harbor: Proceedings Re Alleged PCB Pollution,* 712 F.Supp. 994 (D.Mass.1989) ("*Acushnet II*"); successor liabili-

ty, *In re Acushnet River & New Bedford Harbor Proceedings Re Alleged PCB Pollution,* 712 F.Supp. 1010 (D.Mass.1989) ("*Acushnet III*"); partial settlements, *In re Acushnet River & New Bedford Harbor: Proceedings Re Alleged PCB Pollution,* 712 F.Supp. 1019 (D.Mass.1989) ("*Acushnet IV*"); and natural resource damages under CERCLA, *In re Acushnet River & New Bedford Harbor Proceedings Re Alleged PCB Pollution,* 716 F.Supp. 676 (D.Mass.1989) ("*Acushnet V*").

gency Plan (the "Plan"). The Commonwealth of Massachusetts asks that the Court similarly limit judicial review of any joint federal-state measures taken under CERCLA to review on the relevant administrative record, applying the same arbitrary and capricious standard.[2] The Commonwealth seeks a further ruling that judicial review of the decisions of the Massachusetts Department of Environmental Quality Engineering ("DEQE") made pursuant to state law in this matter also be limited to the same scope and standard.

## I. CERCLA: The Statutory Options for Response

CERCLA includes provisions empowering EPA to respond to potential threats to the public posed by hazardous waste materials in three ways. Pursuant to section 106 of the Act, EPA may (1) issue an administrative order directing a responsible party to act or (2) seek an order to compel the same in district court. 42 U.S.C. sec. 9606. Pursuant to section 104(a), EPA may also (3) perform any necessary work itself and then, pursuant to section 107, sue the responsible party for reimbursement to the extent the necessary response was not inconsistent with the principles set forth in the Plan, 40 C.F.R. pt. 300 (1988). 42 U.S.C. secs. 9604(a), 9605 and 9607(a). Significantly, section 104 permits EPA to go forward even before identifying responsible parties so as to respond quickly to environmental and public health threats. Under this approach, EPA can itself undertake the clean-up of released hazardous substances with funding provided by the "Hazardous Substance Fund" ("Superfund")[3] and bring an action following the clean-up to recover its costs in conducting the "response action"[4] from parties responsible for the release. *Id.* It is quite apparent that an overarching policy behind the creation of the Superfund is to provide the government the ability to respond quickly to actual or threatened hazardous waste pollution, thereby protecting the public from the danger posed by delay in the clean-up of contaminated sites while litigation on the question of liability drags on. *See* S.Rep. No. 848, 96th Cong., 2d Sess. 11–12, 22–23 (1980).

## II. Scope and Standard of Review under CERCLA after SARA

While the standard and scope of review of any response action proposed by EPA prior to the enactment of the CERCLA amendments may well have been arbitrary and capricious review limited to the administrative record, this Court need not decide that issue because the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), P.L. No. 99–499, clearly deliminates the Court's reviewing function. Subsection 113(j)(1) of SARA[5] states that judi-

---

2. Although the opinion which follows addresses expressly only the function of this Court with respect to the United States' claim for response costs under section 107, the defendants concede that that function is identical with respect to any claim for response costs by the Commonwealth under section 107. Defendants' Joint Memorandum In Opposition to Plaintiffs' Motions for Pretrial Ruling On Scope and Standard of Review (Docket # 196) at 22. Thus, the reasoning herein settles the Commonwealth's motion, to the extent it concerns section 107, as well.

3. Former 42 U.S.C. sec. 9631, enacted in 1980 and repealed in 1986, established the Superfund. Pursuant to statutory amendments enacted as part of the Internal Revenue Code of 1986, a "Hazardous Substance Superfund" for use in environmental responses under CERCLA is now established by 26 U.S.C. sec. 9507.

4. Response actions include a variety of investigative, evaluative, and clean-up activities and may involve either short term "removal" actions or longer term "remedial" actions contemplating a permanent remedy. 42 U.S.C. secs. 9601(23) and (25). The Plan limits the expenditure of Superfund monies for long-term "remedial" action to sites on the National Priorities List, *i.e.*, sites in most urgent need of Superfund-financed action. 40 C.F.R. pt. 300, app. B.

5. The relevant portion of SARA provides:
   113(j) Judicial review
   (1) *Limitation*
   In any judicial action under ... [the Act] ..., judicial review of any issues concerning the adequacy of any response action taken or ordered by ... [EPA] ..., shall be limited to the administrative record. Otherwise applicable principles of administrative law shall govern whether any supplemental materials may be considered by the court.
   (2) *Standard*
   In considering objections raised in any judicial action under this chapter, the court shall

cial review of any response action [6] is to be limited to the administrative record, save that "[o]therwise applicable principles of administrative law shall govern whether any supplemental materials may be considered...." 42 U.S.C. sec. 9613(j)(1). Subsection 113(j)(2) directs courts to uphold the President's (*i.e.*, EPA's) decision unless it is "arbitrary and capricious or otherwise not in accordance with law." 42 U.S.C. sec. 9613(j)(2).

■ That this case was pending at the time the SARA amendments were enacted is irrelevant. The law in effect at the time of decision is the law that is to be applied unless manifest injustice will result or statutory direction or legislative history is to the contrary. *Bradley v. Richmond School Bd.*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). No statutory directive or legislative history to the contrary is present here. *See, e.g., United States v. Seymour Recycling Corp.*, 679 F.Supp. 859, 862 (S.D.Ind.1987), *appeal pending*, No. 87–8045 (7th Cir.); *United States v. Rohm & Haas Co.*, 669 F.Supp. 672, 676 (D.N.J.1987) (holding that "Congress plainly intended that the judicial review provisions of Section 113[j] apply to ongoing cases"); *United States v. Nicolet*,

No. 85–3060, slip op. at 8, 1987 WL 4893 (E.D.Pa. May 12, 1987). Nor will manifest injustice result from applying subsections 113(j)(1) and (2) to this case. *See, e.g., Seymour Recycling*, 679 F.Supp. at 862; *Rohm & Haas Co.*, 669 F.Supp. at 677; compare *United States v. Ottati & Goss*, 694 F.Supp. 977, 1001 (D.N.H.1988), *appeal docketed* (1st Cir. Sept. 20, 1988) (holding that a review based solely upon the administrative record would constitute "manifest injustice" where a lengthy trial on liability had already been conducted in 1983–85 and the SARA amendments had been enacted only three months before the remedy trial).[7] Therefore, the Court holds that subsection 113(j) governs this case.

The Court holds further that subsections 113(j)(1) and (2) apply to actions brought pursuant to subsection 106, as well as subsection 107,[8] whether the 106 action is to enforce an EPA administrative order or "to secure such relief as may be necessary to abate such danger or threat" in a district court. 42 U.S.C. sec. 9606(a) (1980). The Court bases its decision largely on the excellent analysis of the district court set forth in *Seymour Recycling*, 679 F.Supp. at 861–65,[9] which satisfactorily answers the

uphold [EPA's] ... decision in selecting the response action unless the objecting party can demonstrate, on the administrative record, that the decision was arbitrary and capricious or otherwise not in accordance with law.
42 U.S.C. sec. 9613(j).

6. This opinion addresses only the scope and standard of review of the response plan itself, not the issue of who may be liable for the costs of such a plan. The parties agree that the issue of liability will be resolved by a full trial before this Court. Plaintiff United States' Memorandum in Support of Motion for Pretrial Ruling on Scope and Standard of Review (Docket # 188) at 7; Plaintiff Commonwealth of Massachusetts' Memorandum in Support of Motion for Pretrial Ruling on Scope and Standard of Review (Docket # 190) at 2. The Court has previously ruled that it will empanel an advisory jury for that trial. *Acushnet II, supra* note 1, at 1006–07.

7. The Court notes that *United States v. Hardage*, 663 F.Supp. 1280, 1284–86 (W.D.Okla.1987) is to the contrary, but considers it unpersuasive, as did the court in *Rohm & Haas Co.*, 669 F.Supp. at 677, because the *Hardage* court did not ana-

lyze the applicability of SARA in light of the *Bradley* rule.

8. The law appears settled that subsection 113(j) applies to section 107 actions at least in the absence of manifest injustice. Courts are divided over the subsection's application to section 106 actions. *See infra* note 9.

9. *See also Ottati and Goss*, 694 F.Supp. at 1001 (agreeing that the standard of review of EPA's selection of a response action under section 106 of CERCLA is normally governed by the arbitrary and capricious standard of subsection 113(j), but ruling that because a lengthy liability trial had already been completed and because SARA was enacted only three months before trial on the remedy phase, review based solely upon the administrative record and under an arbitrary and capricious standard would constitute "manifest injustice" under *Bradley*); *United States v. Northernaire Plating Co.*, 685 F.Supp. 1410, 1415 (W.D.Mich.1988) (holding that the arbitrary and capricious standard is the appropriate one in a subsection 107 action); *United States v. Vertac Chem. Corp.*, 671 F.Supp. 595, 614 No. LR–C–80–109, slip op. at 34 (E.D.Ark. 1987) (ruling that EPA's choice of clean-up

concerns of the court in *Hardage*, 663 F.Supp. 1280. This Court also adds two points of its own to the debate. First, *Hardage* essentially argues that subsection 113(j) does not apply to section 106 because by its terms subsection 113(j) only applies to a response action " 'taken or ordered by the President [or his designate, the EPA].' " 663 F.Supp. at 1284 (quoting 42 U.S.C. sec. 9613[j][1] ). In an action under section 106 to "secure" relief from the court, the court reasoned that no response action has been taken or ordered by the President and, therefore, subsection 113(j) does not govern.

The Court notes first that the *Hardage* court apparently would agree that subsection 113(j) would apply to section 106 where the President (i.e., the EPA) has "issu[ed] such orders as may be necessary to protect public health and welfare and the environment." For aught that appears, EPA will take that step here and thus render this issue moot. If the *Hardage* court's interpretation of the statute is correct, Congress has enacted an unusual statutory scheme, one in which the scope and standard of review seems to hinge on whether the EPA formally issues an order for a response plan or merely asks the court to enforce such a plan.

More likely, the drafting of the statute was imprecise on this point.[10] Indeed, subsection 121(a)[11] describes actions "secured under [42 U.S.C.] section 9606" as Presidentially-selected remedial actions. Thus, in subsection 121(a) the drafters of CERCLA seem to have made clear that they consider a remedial action "secured" under section 106 to be, nevertheless, one "taken or ordered by the President." Hence, the distinction posited by the *Hardage* court appears to collapse and subsection 113(j) seems properly to apply to all section 106 actions.

The defendants' final argument is that the application of the scope and standard of review set forth in subsection 113(j) will deprive them of a constitutionally protected due process interest because they will not have a full and fair opportunity to be heard before being deprived of property. The Court rejects this argument, relying on the thorough and thoughtful opinions found in *Seymour Recycling*, 679 F.Supp. at 863–65 and *Rohm & Haas Co.*, 669 F.Supp. at 677–81.

This Court expressly premises its holding on its belief that EPA will provide the defendants with process that at least satis-

method may be overturned only if it is arbitrary and capricious); *Rohm & Haas*, 669 F.Supp. at 676–77 (holding that subsection 113[j] applies to cases under sections 106 and 107 pending at the time of enactment); *Nicolet*, slip op. at 8, 1987 WL 4893 (EPA decision to be reviewed on the administrative record under the arbitrary and capricious standard in a section 107 action); *United States v. Mattiace Indus.*, No. 86–1792 (HB), slip op. at 6, 1987 WL 47784 (E.D.N.Y. Sept. 24, 1987) (magistrate's decision) (holding that judicial review is limited to the administrative record and the standard is arbitrary and capricious in an apparent subsection 107 action); *cf. United States v. Northeastern Pharmaceutical and Chem. Co.*, 810 F.2d 726, 747–48 (8th Cir.1986), *cert. denied*, 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987) (holding, in a pre-SARA case, that the choice of a particular clean-up method was within EPA's discretion and may be overturned only if that choice was arbitrary and capricious); *United States v. Ward*, 618 F.Supp. 884, 900–901 No. 83–63–CIV–5, slip op. at 30 (E.D.N.C.1985) (holding, in a pre-SARA case, that the standard of review in a section 107 action was arbitrary and capricious); *but see Hardage*, 663 F.Supp. at 1284–86

(holding that subsection 113[j] was inapplicable to a section 106 action for injunctive relief because, in such a case, there is no "response action taken or ordered by the President" and that retroactive application of subsection 113[j] is improper); *United States v. Conservation Chem. Co.*, 661 F.Supp. 1416, 1424–31 (W.D.Mo. 1987) (holding that the subsection 113[j] standard was inapplicable to a CERCLA section 106 action because in such a case there is no "response action taken or ordered by the President").

10. For a discussion of the problematic drafting of CERCLA, *see, e.g., Acushnet V, supra* note 1, 716 F.Supp. at 681, n. 6 (and cases cited).

11. Subsection 121(a) provides in pertinent part:

The President shall select appropriate remedial actions determined to be necessary to be carried out under [42 U.S.C.] section 9604 *or secured under [42 U.S.C.] section 9606* ... which are in accordance with this section and, to the extent practicable, the national contingency plan, and which provide for cost-effective response (emphasis added).

42 U.S.C. sec. 9621(a) (1986).

fies the requirements of SARA section 113(k), 42 U.S.C. sec. 9613(k), and that matches the process promised by the United States before this Court (*i.e.*, making draft reports and the data underlying such reports available to the defendants; requesting, accepting and responding to the defendants' comments on such reports; making EPA engineers available to the defendants to discuss recommendations; granting reasonable extensions to the time for public comment deadline when requested to do so by the defendants; and preparing an evaluation of alternative plans of action including the no-action alternative). *See* Plaintiff United States' Memorandum in Support of Motion for Pretrial Ruling on Scope and Standard of Review (Docket # 188) at 8–12; November 21, 1985 Transcript at 9, 12, 14–15.

The Court also assumes that the EPA will accept, consider, and make part of the record written submissions from the defendants' experts. Such procedure under an arbitrary and capricious standard, coupled with a trial on the liability issue, and this Court's review of the administrative record generated by the EPA's procedure, suffice to satisfy due process.[12]

### III. *Response Costs Under Massachusetts Law*

The defendants represent to this Court that, as a practical matter, it is unlikely that the Commonwealth will undertake any separate remedial program pursuant to Massachusetts law that will require review by this Court. The sovereigns are silent on this point. In an exercise of its discretion and in the interests of the efficient use of judicial resources, this Court chooses not to reach these issues at this time and therefore denies the Commonwealth's motion without prejudice to its renewal at such time as it appears reasonably likely that the Commonwealth will pursue a remedy under state law.

12. The Court simply holds that such process is sufficient, not that every element of it is necessary or that a different combination of proce-

### IV. *Conclusion*

Consistent with the foregoing, the United States' motion concerning the scope and standard of review is GRANTED. The Commonwealth's motion on the same subject is DENIED.

dural elements would not pass constitutional muster as well.