UNITED STATES of America

v.

**SEYMOUR RECYCLING CORPORATION, et al.**

No. IP 80–457–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

July 14, 1987.

Order To Allow Interlocutory Appeal
July 29, 1987.

**860**

STECKLER, District Judge.

On this motion the United States seeks a ruling that the remedy selection by the United States Environmental Protection Agency ("EPA") for the cleanup of the Seymour Recycling Corporation site will be reviewed by the Court on the administrative record, applying the arbitrary and capricious standard of review, and modification of the Court's August 10, 1984 Case Management Order accordingly. Having reviewed the arguments advanced by the parties, the Court hereby grants the United States' motion and modifies the case Management Order previously entered by this Court as set forth below.

### Background

The United States filed this action in 1980 against the owners and operators of the Seymour Recycling Corporation under Section 7003 of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6973, and Section 311 of the Clean Water Act, 33 U.S.C. § 1321, seeking relief to abate the hazard posed by hazardous wastes at the Seymour site.

In December 1980, Congress enacted the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601–9675, to address the threat to public health and the environment from releases of hazardous substances at sites throughout the country. Following CERCLA's enactment, the United States amended the complaint to seek relief under Sections 106 and 107 of CERCLA, 42 U.S.C. §§ 9606 and 9607. The United States sought injunctive relief under Section 106 of CERCLA to abate and remedy the release and threatened release of hazardous substances at the Seymour site, and recovery under Section 107 of CERCLA of costs incurred by the United States in taking response actions at the site.

In 1982, the United States filed a First Amended Complaint to add as defendants twenty-four generators of hazardous substances shipped to the site, and simultaneously filed a Consent Decree, which was approved by this Court, pursuant to which these generators performed a surface cleanup of the site. In 1984 the United States filed a Second Amended Complaint adding forty-nine additional generators ("Generator Defendants") as defendants.

Following the surface cleanup, EPA began the Remedial Investigation/Feasibility Study ("RI/FS") required by the National Oil and Hazardous Substances Pollution Contingency Plan promulgated under Section 105 of CERCLA, 42 U.S.C. § 9605. Pursuant to a stipulation entered into between the United States and Generator Defendants on July 9, 1984, Generator Defendants were given access to and opportunity to comment on the RI/FS work plans and data.

On August 10, 1984, the Court entered a Case Management Order which bifurcated the case into liability and damages phases, with the damages phase to be completed first. The Order provided a schedule for pretrial proceedings and a trial on damages to follow the completion of the RI/FS. The Case Management Order also provided

Generator Defendants with the opportunity to conduct their own study of the site.

EPA completed the Remedial Investigation on May 12, 1986, and the Feasibility Study and a proposal for the final remedy for the Seymour site on August 29, 1986. Public notice and opportunity to comment followed. Generator Defendants submitted written comments to EPA during the public comment period.

The United States has now moved the Court to rule that EPA's selected remedy, if challenged by defendants, will be reviewed by the Court on the administrative record, applying an arbitrary and capricious standard. The United States bases its request on Section 113(j) of CERCLA, enacted on October 17, 1986, by the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), Pub.L. No. 99–499, § 113(c)(2), 100 Stat. 1613, 1650 (1986), and on traditional rules of administrative law.

The Generator Defendants urge the Court to review *de novo* EPA's remedy decision. Generator Defendants argue (1) that SARA's administrative record review provisions are inapplicable to pending cases; (2) that these provisions do not apply to Section 106 actions for injunctive relief; and (3) that application of administrative record review principles to this case would violate due process. The Court finds Generator Defendants' arguments unpersuasive and, therefore, grants the United States' motion.

### Section 113(j) of CERCLA and Traditional Rules of Law

██ The plain language of Section 113(j) of CERCLA, as amended by SARA, requires the conclusion that judicial review of EPA's remedy decision in CERCLA cases must be based on the administrative record, applying the arbitrary and capricious standard:

(1) *Limitation—In any judicial action under this Act, judicial review of any* *issues concerning the adequacy of any response action taken or ordered by the President shall be limited to the administrative record.* Otherwise applicable principles of administrative law shall govern whether any supplemental materials may be considered by the court.
(2) *Standard—In considering objections raised in any judicial action under this Act, the court shall uphold the President's decision in selecting the response action unless the objecting party can demonstrate, on the administrative record, that the decision was arbitrary and capricious or otherwise not in accordance with law.*

Sections 113(j)(1) and (2) of CERCLA, 42 U.S.C. § 9613(j)(1) and (2), as added by SARA, Pub.L. No. 99–499, § 113(c)(2), 100 Stat. 1613, 1650 (1986) (emphasis added).

In addition, review of EPA's selection of remedies for CERCLA sites on the basis of the administrative record is in accord with well-established rules of administrative law involving judicial review of informal agency decisions. *See, e.g., Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 743–44, 105 S.Ct. 1598, 1606–07, 84 L.Ed.2d 643 (1985); *Camp v. Pitts,* 411 U.S. 138, 141–43, 93 S.Ct. 1241, 1243–1244, 36 L.Ed.2d 106 (1973); *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). The Eighth Circuit and two district courts have found these traditional rules to be applicable to EPA's selection of remedies for hazardous waste sites under CERCLA, even prior to the enactment of Section 113(j). *See United States v. Northeastern Pharmaceutical & Chemical Co.,* 810 F.2d 726, 747–49 (8th Cir.1986); *United States v. Ward,* 618 F.Supp. 884, 900 (E.D.N.C.1985); *United States v. Western Processing Co.,* No. C–83–252M, slip op. at 4–6, (W.D.Wash. Feb. 19, 1986) [Available on WESTLAW, 1986 WL 15691].[1]

---

1. The legislative history of SARA expressly confirms Congress' agreement with the reasoning of these cases, by stating that Section 113(j) was added to "clarify and confirm" the application to CERCLA of the scope and standard of judicial review of informal agency action found in the Administrative Procedure Act at 5 U.S.C. § 706. *See* S.Rep. No. 11, 99th Cong., 1st Sess. 57 (1985); H.R.Rep. No. 253, 99th Cong., 1st Sess. Part 1, 139, Part 3, 25, and Part 5, 26, *reprinted in* 1986 U.S.Code Cong. & Ad.News 2835, 2921, 3047–48, 3149.

Application of SARA to Pending Cases

■ The Generator Defendants argue that Section 113(j) of CERCLA, as added by SARA, does not apply to cases filed before SARA's effective date, October 17, 1986. This argument is refuted by the plain language of the effective date provision of SARA:

> Except as otherwise specified in section 121(b) of this Act or any other provisions of titles I, II, III, or IV of this Act, the amendments made by titles I through IV of *this act shall take effect on the enactment of this Act.*

Pub.L. No. 99–499, § 4, 100 Stat. 1613, 1614 (1986) (emphasis added). The issue before the Court concerns judicial review of a remedy decision that has not yet been made. Therefore, the immediate effective date of Section 4 requires the application of Section 113(j) to this case.

Application of Section 113(j) to this pending case is further mandated by the rule that a court generally applies "the law in effect at the time it renders its decision," unless there is statutory or legislative direction to the contrary or application of the new rule would result in "manifest injustice." *See Bradley v. Richmond School Board,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). As the Court here has not yet been called upon to render a decision on remedy selection, the Court must look to Section 113(j) as the "law in effect at the time it renders its decision."

There are no exceptions to the *Bradley* rule involved here. There is no statutory or legislative direction indicating that Section 113(j) should not be applied to pending cases. Indeed, the legislative history is to the contrary. *See* H.R. Conf. Rep. No. 962, 99th Cong., 2d Sess. 183–84, *reprinted in* 1986 U.S. Code Cong. & Ad. News 2835, 3276–77. Nor does application of Section 113–j in this case cause any "manifest injustice" to Generator Defendants. Generator Defendants argue that the Case Management Order, as well as past statements made by the government in this case, led them to expect a trial, and that it would be unfair now to alter this course. These expectations, however, do not give rise to the "matured or unconditional right" that must be established to invoke the "manifest injustice" exception. *See Greene v. United States,* 376 U.S. 149, 160, 84 S.Ct. 615, 621, 11 L.Ed.2d 576 (1964).

Application to Section 106 of CERCLA

■ Generator Defendants further argue that Section 113(j) of CERCLA does not apply to actions, such as this one, for injunctive relief under Section 106 of CERCLA. This argument is refuted by the plain language of Section 113(j), as well as by the language of related provisions of CERCLA added by SRA, and the legislative history of SARA.

Section 113(j) plainly states that it is applicable "in any judicial action under this Act." Sections 113(j) and (2) of CERCLA, as added by SARA, Pub.L. No. 99–499, § 113(c), 100 Stat. 1613, 1650 (1986). Thus, on its face this provision applies in judicial actions under Section 106 of CERCLA.

Further, in Section 121(a) of CERCLA, 42 U.S.C. § 9621(a), also added by SARA, Pub. L. No. 99–499, § 121(a), 100 Stat. 1613, 1672 (1986). Congress provided that *"[t]he President shall select* appropriate remedial actions determined to be necessary to be carried out under section 104 or *secured under Section 106* which are in accordance with this section." (Emphasis added).[2]

The justification for empowering the executive agency to select remedies under both Section 104 and Section 106 is found in the subsequent provisions of Section 121, which require that cleanups meet stringent technical standards and that alternative remedies be assessed for economic and policy considerations. Such determinations are commonly and properly entrusted to agencies with the expertise to make such judgments.

---

**2.** This statutory command is consistent with the existing provisions of the National Contingency Plan respecting remedy selection under Section 106 of CERCLA. *See* 40 CFR § 300.68(1), which provides that "[w]hen a person other than the lead agency takes the response action, the lead agency shall evaluate and approve the adequacy of proposals submitted when the response action ... is taken pursuant to section 106 of CERCLA."

In addition, remedy selection by the agency pursuant to Section 121[3] is necessary to effectuate the provisions of Section 117, 42 U.S.C. § 9617, also added by SARA, Pub.L. No. 99–499, § 117, 100 Stat. 1613, 1654 (1986), which provides for public participation in EPA's selection of a remedy. These public comment provisions could not be given meaningful effect if review of the agency's remedy selection were by trial *de novo*.

Generator defendants do not address Sections 121 or 117, but rely on certain language in Section 113(j)(1) to urge the Court to review the remedy selection in a Section 106 injunctive action on a *de novo* basis.[4] In their view, the language in Section 113(j)(1) referring to "actions taken or ordered by the President" should be read to exclude Section 106 injunctive actions from the operation of Section 113(j) entirely, because they do not involve "action taken or ordered by the President." They would limit the provisions of Section 113(j) to Section 107 actions (in which the agency seeks to recover the costs of implementing a remedy taken under the authority of Section 104), or actions under Section 106 in which the agency has issued an administrative order.

Generator Defendants' argument is not reconcilable with the broadly-phrased "in any judicial action under this Act" language of Sections 113(j)(1) and (2). In fact, it entirely ignores Section 113(j)(2), which does not contain the "taken or ordered" language on which they rely. Moreover, their argument is inconsistent with, and indeed would frustrate, the public comment provisions of Section 117 and the provisions of Section 121 directing the President to apply consistent cleanup standards and to select the remedies for all CERCLA sites.

Significantly, Generator Defendants have offered no legislative history to support their interpretation of Section 113(j)(1). This Court will not lightly presume that Congress would have remained silent if it intended to create a bifurcated scheme of judicial review that depends on the procedural form of the action, as suggested by Generator Defendants. In fact, the legislative history of SARA indicates that Congress did not draw any distinction between Section 106 actions and Section 107 actions, or between Section 106 actions based on whether an administrative order was issued, in discussing the SARA provisions that would provide for judicial review of remedy selection on the administrative record. *See* H.R.Rep. No. 253, 99th Cong., 1st Sess. Part 1, 81, *reprinted in* 1986 U.S.Code Cong. & Ad.News 2835, 2863.

Given the express language of Section 113(j) providing for review on the administrative record *"in any judicial action under this Act,"* the absence of legislative history supporting Generator Defendants' view, and the need to interpret Section 113(j) in a consistent manner with Section 121 and the general statutory scheme of CERCLA, the Court concludes that Section 113(j) was intended to govern judicial review of remedy selection in all cases, including Section 106 injunctive cases.

### Due Process

■ Generator Defendants argue that judicial review on the administrative record will deprive them of due process of law. On the facts presented in this case, however, a *de novo* trial on remedy is not necessary to satisfy due process requirements. The constitutional requirement of due process is flexible and "calls for such

---

3. The President has delegated his authority to select remedial actions to the Administrator of EPA. Exec. Order No. 12,580, 52 Fed.Reg. 2923 (1987).

4. Generator Defendants further argue that courts retain their "traditional equitable discretion" in the absence of an express contrary congressional command. That discretion, however, may be limited by statute expressly or "by a necessary and inescapable inference." *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 313, 102

S.Ct. 1798, 1804, 72 L.Ed.2d 91 (1982). *See also Amoco Prod. Co. v. Village of Gambell*, — U.S. ——, 107 S.Ct. 1396, 1402–03, 94 L.Ed.2d 542 (1987), and *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 193–95, 98 S.Ct. 2279, 2302–03, 57 L.Ed.2d 117 (1978). By the express language of SARA, Congress has directed that judicial review of EPA's selected remedy must be limited to the administrative record "in any judicial action," thereby limiting this Court's equitable discretion to select a remedy under Section 106.

procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)). As held in *Mathews*, this does not require a trial in all circumstances. 424 U.S. at 333–34, 96 S.Ct. at 901–02.

In their brief, Generator Defendants correctly note that due process requires that the opportunity to comment on the government's evidence must be provided "at a meaningful time, in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). The ability to comment on the government's evidence in a meaningful manner depends, in large part, on accessibility to that evidence. Under the terms of the July 9, 1984, stipulation between the United States and Generator Defendants, Generator Defendants had the opportunity from an early stage to comment on the RI/FS performed by EPA,[5] to receive and comment on the data generated by the RI/FS, and to perform their own studies. Accordingly, Generator Defendants received all the information necessary to comment "in a meaningful manner.[6]

The most "meaningful time" to comment on selection of a remedy is before that decision is made. The National Contingency Plan and CERCLA, as amended by SARA, provide for a public comment period which follows publication of the Feasibility Study and precedes the agency's selection of a remedy. During that public comment period in this case, Generator Defendants submitted their comments on the RI/FS and EPA's proposed remedy. Pursuant to Section 117(b) of CERCLA, as added by SARA, EPA must address these comments in reaching its final decision on remedy. Thus, the Court is persuaded that Generator Defendants' opportunity to comment comes at a "meaningful time," *i.e.*, before EPA's remedy selection has been made.

Under *Mathews v. Eldridge*, the Court is required to consider three factors in deciding what process is "due" in a particular situation: (1) the private interest involved; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the public interest involved, including the governmental function and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail. 424 U.S. at 335, 96 S.Ct. at 903.

The Generator Defendants' "private interest" in the remedy for the Seymour site is a financial one. Under the *Mathews* analysis, this private interest must be balanced against the public interest and against any risk of erroneous deprivation of the Generator Defendants' interest through the procedures used.

This Court must, and will, provide Generator Defendants with due process protection against "erroneous deprivation" of

---

**5.** In particular, they received the work plan for the RI/FS and the Quality Assurance Project Plan, all soil and ground water sampling data and analyses, ground water modeling information, wildlife biota sample results, boring and gamma logs, and maps identifying test locations. Pursuant to the Stipulation, Generator Defendants were notified of schedules for soil and water testing. Their expert observed the drilling, development, and installation of monitoring wells, and the collection of ground water and soil samples.

**6.** In support of their position, Generator Defendants cite court decisions in *United States v. Ottati & Goss*, No. 80–225–L (D.N.H. Nov. 14, 1986) and *United States v. Hardage*, 663 F.Supp. 1280 (W.D.Okla.1987). The Generator Defendants also cite a Special Master's Recommendation in *United States v. Conservation Chem. Co.*, 661 F.Supp. 1416 (W.D.Mo.1987). This Court is not bound by the decisions of other district judges. In fact, such decisions are "entitled to no more weight than their intrinsic persuasiveness merits." *Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1124 (7th Cir.1987). This Court finds the authority cited by the Generator Defendants to be unpersuasive. The cases cited by the Generator Defendants are in a much different posture than this case. In the cases cited by the Generator Defendants trial preparation was either completed or well-advanced. Additionally, the defendants in these cases were not given the opportunity to comment on the government's RI/FS data or submit independent evidence. This case, on the other hand, has been put in an ideal posture for record review by the Court's Case Management Order of August 10, 1984.

their interest by conducting a full *de novo* review of their liability for the cleanup of the Seymour site. This liability will be determined based on a preponderance of the evidence.

As discussed above, Generator Defendants have been provided with a "meaningful opportunity to comment" on the EPA's site assessment and remedy selection. In further protection of Generator Defendants' rights, this Court is required to, and will, make a "searching and careful" review of the record to determine whether the agency has considered all of the relevant factors and reached a rational decision in selecting a remedy for the Seymour site. *See Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 415–16, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971). If the Generator Defendants do not agree with the remedy that is selected by EPA, they will have the opportunity to submit briefs to the Court on the adequacy of the record as support for the agency's remedy decision. They will not have to implement the remedy until it has been affirmed by this Court. Finally, this Court will retain discretion to decide what the respective parties will do to implement the remedy that is upheld by this Court. Thus, there is little, if any, risk that Generator Defendants will be "erroneously deprived" of their financial interest in the remedy for the Seymour site if this Court reviews EPA's remedy selection on the administrative record.

The third factor to be considered under *Mathews* is the public interest. There can be little question that judicial review of EPA's remedy selection on the basis of the administrative record will be far more efficient and expeditious than a trial of remedy issues under the circumstances presented in this case, and would impose a substantially lesser burden of time and expense on the parties, as well as the Court. In addition, the expeditious resolution of this issue would allow the remedy to go forward at the Seymour site after seven years of litigation and, accordingly, would serve the overall purpose of CERCLA as a remedial statute designed by Congress to give the federal government "the tools necessary for a *prompt and effective response* to the

problems of national magnitude resulting from hazardous waste disposal." *Dedham Water Co. v. Cumberland Farms Dairy, Inc.,* 805 F.2d 1074, 1081 (1st Cir.1986) (quoting *United States v. Reilly Tar & Chemical Corp.,* 546 F.Supp. 1100, 1112 (D.Minn.1982)) (emphasis added).

Finally, judicial review on the administrative record, and the companion principle of judicial deference to the agency's expertise in these matters, will provide for more uniform and consistent remedial action decisions for hazardous waste sites throughout the country, which ultimately will provide more fairness to the process both for the responsible parties and for the public to be served by these remedies.

In weighing all of the factors, this Court concludes that the public interest is best served by judicial review of EPA's remedy selection on the administrative record.

Thus, it appears to this Court, after analysis of the three factors required to be considered in determining due process requirements under *Mathews v. Eldridge,* that judicial review of EPA's remedy selection in this case on the basis of the administrative record will be in accord with the requirements of due process.

### Discovery

■ As a general rule, review on the administrative record eliminates the need for discovery, as the administrative record contains all that is relevant to the decision in issue. *See United States v. Morgan,* 313 U.S. 409, 422, 61 S.Ct. 999, 1004, 85 L.Ed. 1429 (1941). Exceptions to this rule are limited to situations in which: (1) judicial review is frustrated because the record fails to explain the agency's action, *Camp v. Pitts,* 411 U.S. at 142–43, 93 S.Ct. at 1244; (2) the record is incomplete, *Texas Steel Co. v. Donovan,* 93 F.R.D. 619, 621 (N.D.Tex.1982); (3) the agency failed to consider all relevant factors, *Florida Power & Light Co. v. Lorion,* 470 U.S. at 744, 105 S.Ct. at 1607; or (4) there is a strong showing that the agency engaged in improper behavior or acted in bad faith, *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. at 420, 91 S.Ct. 825; *Bethlehem*

*Steel Corp. v. United States Environmental Protection Agency,* 638 F.2d 994, 1000 (7th Cir.1980).

■ As the EPA has not yet reached its final decision or certified a record to this Court, discovery based on any of the first three exceptions to this rule would be premature. Generator Defendants have made no request for discovery under these exceptions, or alleged any improper behavior or bad faith on the part of the agency. Therefore, no discovery is warranted at this time.[7]

THEREFORE, based on the foregoing, the Court orders as follows:

**1. Scope and Standard of Review.**

Judicial review of EPA's remedy decision for the Seymour site will be based on the administrative record, applying the arbitrary and capricious standard of review.

**2. Certification and Filing of Record.**

Within thirty (30) days of EPA's selection of a final remedy for the Seymour site, the United States shall certify and file with this Court the administrative record of decision-making for response actions taken or selected by the government with respect to the Seymour site.

**3. Defendants' Objections.**

Within forty-five (45) days after the filing of the government's record, defendants may file a brief setting forth any objections to the government's selection of response actions for the Seymour site, citing all parts of or defects in the administrative record and any legal authorities on which they rely. Nothing herein shall preclude the United States from filing a motion for summary judgment on the record.

**4. Government's Response.**

The United States may file a response to defendants' objections within forty-five (45) days of receipt.

**5. Review of Government's Cost Documentation.**

Within sixty (60) days the defendants shall complete examination of the United States' documentation of its costs incurred to date for response actions taken with respect to the Seymour site, and shall submit any objections to the United States in writing. Within forty-five (45) days after receipt of defendants' objections, the United States may respond to defendants' comments in writing. Within thirty (30) days after the service of the United States' response on defendants, the parties shall settle any outstanding disputes over the amount of the United States' costs or submit the matter to this Court for resolution.

The above shall supersede all inconsistent provisions of the Case Management Order of August 10, 1984, including all provisions of Sections D and E thereof respecting discovery, pretrial proceedings, and trial on damages.

**ORDER AMENDING JULY 14, 1987 ORDER TO ALLOW INTERLOCUTORY APPEAL**

The Court having reviewed defendants' Motion To Amend Order To Allow Interlocutory Appeal and being duly advised, finds that such Motion should be GRANTED and therefore ORDERS that its Order of July 14, 1987 is hereby amended to include the following statement:

It is the Court's opinion that this Order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from this Order may materially advance the ultimate termination of the litigation.

---

7. If any subsequent requests for discovery under these exceptions are made, it should be noted that the remedy for an incomplete record or failure to consider all relevant factors may not necessarily involve discovery. Generally, the appropriate remedy is remand to the agency for supplemental information or consideration. *See Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 744, 105 S.Ct. 1598, 1607, 84 L.Ed.2d 643 (1985). *Accord, Public Power Council v. Johnson,* 674 F.2d 791, 794 (9th Cir.1982).