**COMMONWEALTH OF MASSACHUSETTS, Plaintiff,**

v.

**BLACKSTONE VALLEY ELECTRIC COMPANY, et al., Defendants.**

Civ. A. No. 87–1799–T.

United States District Court, D. Massachusetts.

Nov. 25, 1991.

Robert Ritchie, Alan Fierle, Asst. Attys. Gen., Boston, Mass., for Com. of Mass.

Christine M. Gravelle, Peter J. McGinn, John Voorhees, Tillinghast, Collins & Graham, Providence, R.I., for Blackstone Valley Elec. Co.

Stephen M. Leonard, Joanne A. Robbins, Dianne Chabot, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., Boston, Mass., for Courtois Sand and Gravel Co., Normand A. Courtois and Raymond J. Courtois.

Robert S. Ovoian, Attleboro, Mass., for Maurice, Charlotte, Stephen and Sylvie Brunelle.

### MEMORANDUM

TAURO, District Judge.

The Commonwealth of Massachusetts ("Commonwealth") cleaned up a hazardous waste site in North Attleboro, Massachusetts, and now seeks to recover the cleanup costs from several defendants [1] pursuant to

---

1. Defendants, the Brunelles, are a couple who own the North Attleboro land that was contaminated. Defendant, Courtois Sand & Gravel Company, is a former owner of the contaminated land, and defendants, Raymond and Norman Courtois, own the company. Finally, de-

CERCLA, 42 U.S.C. §§ 9601, *et seq.*, and its Massachusetts equivalent, Mass.Gen.L. ch. 21E. The parties' summary judgment motions are before the court.

## I.

The Commonwealth moves for partial summary judgment on the issue of whether a substance removed from the site, ferric ferrocyanide ("FFC") was "hazardous" within the meaning of CERCLA. The essence of the Commonwealth's argument is that FFC is specifically listed in CERCLA's list of hazardous substances, thus requiring a finding that the materials are "hazardous." Defendant Blackstone Valley Electric Company ("Blackstone") is the only party opposing this motion.

CERCLA imposes liability when a "hazardous substance" is released into the environment, or when there is a substantial threat of such a release. 42 U.S.C. § 9604(a)(1). The statute defines "hazardous substance" by reference to definitions and designations under sections of four other federal statutes: The Clean Water Act, 33 U.S.C. § 1317(a); The Solid Waste Disposal Act, 42 U.S.C. § 6921; The Clean Air Act, 42 U.S.C. § 7412; and the Toxic Substances Control Act, 15 U.S.C. § 2606. *See* 42 U.S.C. § 9601(14).

CERCLA adopts a "List of Hazardous Substances and Reportable Quantities," which catalogues all of the substances that are deemed "hazardous" under CERCLA.[2] The list includes "Cyanides (soluble salts and complexes) not otherwise specified." Both parties agree that, where a substance is specifically listed, it is "hazardous" as a matter of law. *See General Electric Co. v.*

*Litton Business Systems, Inc.*, 715 F.Supp. 949, 957–58 (W.D.Mo.1989); *United States v. Metate Asbestos Corp.*, 584 F.Supp. 1143, 1148 (D.Ariz.1984). The parties dispute, however, whether ferric ferrocyanide is listed.

Essentially, the Commonwealth argues that the List's use of the generic term "cyanide" was meant to include *all* forms of cyanide, including FFC. Blackstone, on the other hand, argues that FFC is a safe, insoluble and widely used compound, and that the failure to mention it specifically indicates that it is not "hazardous" for purposes of CERCLA.

■ The plain meaning of legislation is ordinarily conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intention of the drafters. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989).

■ The Commonwealth contends that the term "cyanides" describes "all those compounds containing the negatively charged cyanide ion (CN-) and positively charged cations or complexes of cations." Affidavit of James H. Porter dated June 22, 1990 ¶ 7 (hereinafter "Porter Affidavit"). *Standard Methods for the Examination of Water and Wastewater*[3] states that

> Cyanide refers to all of the CN groups in cyanide compounds that can be determined as the cyanide ion, CN-, by the methods used. The cyanide compounds in which cyanide can be obtained as CN- are classed as simple and complex cyanides.

"[t]he elements and compounds and hazardous wastes appearing in Table 302.4." This table is the "List of Hazardous Substances" at issue here.

fendant, Blackstone Valley Electric Company, is a nearby public utility with a plant in Pawtucket, Rhode Island.

**2.** CERCLA's incorporation of this "list" is authorized as follows: CERCLA provides that the Administrator of the EPA shall promulgate regulations designating "hazardous substances." 42 U.S.C. § 9602. The Administrator has promulgated such regulations, defining a "hazardous substance" as "any substance designated pursuant to 40 C.F.R. Part 302." 40 C.F.R. § 302.3. In Section 302.4 of that regulation, the Administrator has identified as hazardous substances

**3.** Mr. Porter states that this publication is prepared and published by the American Public Health Association, American Water Works Association, and the Water Pollution Control Federation, and is a "universally accepted environmental chemistry lab testing manual in the general scientific community." *Id.* ¶ 4.

Porter Affidavit ¶ 7. The Commonwealth contends that FFC is one of the complex cyanides. *Id.*

Blackstone has three arguments. First, it defines "cyanide" as follows: "Hydrogen cyanide (HCN) ... is well known because of its intensely poisonous properties.... Its salts are called *cyanides.*" Blackstone's Supplemental Memorandum Attach. 16. Its argument is that, since FFC is not a salt of HCN, it cannot be a cyanide. Second, it contends that, unlike the salts of HCN, FFC is "among the most stable of all the complex compounds." *Id.* at 6. It claims that "in the presence of ferrocyanide the free cyanide concentration is so small that it is not detectable by any known method." *Id.* at 7. Third, Blackstone Valley contends that scientific literature classifies FFC as an iron compound. Blackstone Valley catalogues numerous chemistry books that discuss this compound under the chapter on iron, but not under the section of the book that discusses cyanides.

None of these arguments is persuasive. Blackstone's definition of cyanides does not exclude the possibility that compounds other than salts of HCN could be called cyanides. Indeed, the listing for cyanide says it includes "soluble salts and complexes." This indicates that cyanides can exist as both salts and as complexes. In addition, FFC's stability is of no import, if it could still be called a cyanide. Furthermore, as the Commonwealth points out, FFC could be both an iron compound and a cyanide at the same time.[4]

The plain meaning of cyanides includes complexes such as ferric ferrocyanide. This court thus finds that FFC is hazardous, because it is on the List of Hazardous Substances under the general heading "cyanides." Blackstone's argument, essentially, is that FFC should not be on the list.

This is a contention that Blackstone should present to the EPA, not to this court.[5]

## II.

The Courtois brothers have filed a summary judgment motion, arguing that they are not liable, because they were not "owners or operators" of the hazardous waste site. *See* 42 U.S.C. § 9607(a). Rather, the company, Courtois Sand & Gravel Co. ("CS & G"), was the owner of the site.

Under CERCLA, a court need not "pierce the corporate veil" to hold officers and directors of a corporation personally liable for disposing hazardous waste. *See United States v. Northeastern Pharmaceutical & Chem. Co.*, 810 F.2d 726, 744 (8th Cir.1986) (imposing liability on the president and vice-president of the company). To hold an officer liable, however, he must have personally participated in the conduct that violated CERCLA. *Id.* (defendants had direct supervision over the disposal of hazardous waste); *New York v. Shore Realty Corp.*, 759 F.2d 1032, 1052 (2d Cir.1985) (same). *See* 42 U.S.C. § 9607(a)(3) (holding liable "any person" who arranged for the disposal or transportation for disposal of hazardous substances).

Here, the Courtois brothers were not personally involved in the storing of hazardous waste. Neither brother ever owned the site that is the subject of this litigation. It is undisputed that the site was owned by CS & G beginning in 1932, a corporation of which the brothers later became officers and directors. Byproducts from Blackstone's coal gassification process were stored on the property from 1932 until 1944, when Blackstone ceased producing gas from coal. During this time period, CS & G was owned and run by Albert

---

4. For instance, table salt, NaCl, is known as both a sodium compound and a chloride.

5. As the court in *General Elec. Co.*, 715 F.Supp. at 957–58 (W.D.Mo.1989) stated in response to arguments that a substance was not hazardous: [I]t would be improper for this Court to second-guess the listings propounded by the administrator of the EPA. This Court and the parties to this action were bound by the law as passed by Congress and the regulations as set forth in the Code of Federal Regulations.... If parties waited for a court to determine which waste is hazardous, any necessary clean-up would be delayed.... The opinions of defendant's expert ... are better suited for testimony before Congress or the EPA.

**1040**

Courtois (the now-deceased father of the brothers). He arranged the relationship between CS & G and Blackstone. It was not until their father died in 1948 that the Courtois brothers became involved in managing and running the company and, as noted above, the dumping of coal waste allegedly ceased in 1944. Based on these facts, the Courtois brothers cannot be held personally liable under CERCLA.

■ The Commonwealth argues that, even if the Courtois brothers cannot be held liable as an owner or operator, they are liable for further "disposal" of the material occurring after the brothers began running the company. In making this contention, the Commonwealth relies on a broad definition of "disposal" that has been read into CERCLA by courts.

For example, in *Tanglewood East Homeowners v. Charles–Thomas, Inc.*, 849 F.2d 1568 (5th Cir.1988), the court concluded that the meaning of "disposal" was not limited "to a one-time occurrence—there may be other disposals when hazardous materials are moved, dispersed, or released during landfill excavations and fillings." *Id.* at 1573. Here, the evidence the Commonwealth offers is that, in the late 1950's, one of the company's employees uncovered some of the hazardous material and smeared it on the track of the bulldozer he was operating. This evidence is insufficient to establish that the Courtois brothers had engaged in the disposal of hazardous waste. Their Motion to Dismiss, therefore, must be allowed.

### III.

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment is ALLOWED, and Defendants Raymond and Norman Courtois' Motion to Dismiss is ALLOWED.

An order will issue.