## BLACKSTONE VALLEY ELECTRIC CO., Plaintiff,

v.

## STONE & WEBSTER, INC., Stone and Webster Engineering Corporation, Stone and Webster Management Consultants Inc., and Valley Gas Company, Defendants.

### Civ. A. No. 94–10178–JLT.

United States District Court,
D. Massachusetts.

Nov. 7, 1994.

74

David A. Fazzone, McDermott, Will & Emery, Boston, MA, John Voorhees, Isaacson, Rosenbaum, Woods & Levy, PC, Denver, CO, for Blackstone Valley Elec. Co.

Joseph D. Steinfield, Lisa D. Campolo, Hill & Barlow, Boston, MA, Susan Millington Campbell, Anthony M. D'Iorio, Edward T. DeSilva, Elizabeth I. Hook, Dennis M. Walsh, Mudge, Rose, Guthrie, Alexander & Ferdon, New York City, for defendants.

*MEMORANDUM*

TAURO, Chief Judge.

In 1984, the Massachusetts Department of Environmental Quality Engineering (now the Department of Environmental Protection), determined that a site in Attleboro Massachusetts had been contaminated by industrial waste. Acting pursuant to CERCLA and the Massachusetts state law equivalent, M.G.L. c. 21E, the Commonwealth of Massachusetts commenced a cleanup operation at the site. Three years later, the Commonwealth brought suit against the Blackstone Valley Electric Company ("BVE"), alleging that the industrial waste found at the site was generated by Blackstone Valley Gas & Electric ("BVG&E"), a predecessor of BVE, and seeking to recover the costs incurred in the cleanup. That case, *Commonwealth v. Blackstone Valley Electric Co.*, C.A. No. 87–

1799–T, was decided on November 7, 1994, and is reported at 867 F.Supp. 78.[1]

BVE now brings the present action against several defendants, arguing that any costs assigned to it should be borne by several parties in accordance to their fault. One of these defendants, the Valley Gas Company, has now moved the court for summary judgment.

## I.

### BACKGROUND

The waste that gave rise to the cleanup operations at the center of this dispute originated at a gas manufacturing plant in Pawtucket, Rhode Island ("the Tidewater plant") between the late 1800's and the mid 1950's. At all relevant times in this period, the Tidewater plant was owned and operated by BVG & E or one of its corporate predecessors.

The corporate reorganization that lies at the heart of this dispute dates back to the late 1950's, when, in response to a SEC divestiture order, BVG & E was forced to divest itself of its gas division. This divestiture occurred in several stages over the next decade. In 1956, the Rhode Island Legislature, by special charter, created the Valley Gas Company as a subsidiary of BVG & E. In this capacity, Valley Gas became responsible for all of BVG & E's gas operations. In 1961, BVG & E's gas-related assets were formally transferred to Valley Gas pursuant to a series of sales agreements ("the agreements"). In 1964, the divestiture was finalized with BVG & E's sale of all remaining Valley Gas stock. One year later, in 1965, the Rhode Island General Assembly amended BVG & E's charter, renaming the company Blackstone Valley Electric Company.

Valley Gas' motion to dismiss is based upon the terms of the 1961 sales agreements between BVG & E and Valley Gas.[2] Valley Gas first argues that, by the terms of the 1961 agreements, it never assumed any of BVG & E's environmental liabilities. Second, Valley Gas argues that any liability transferred in spite of the agreement was shifted back onto BVG & E by a contemporaneous indemnification agreement. Because the need to reach the second issue is contingent upon the resolution of the first, the court begins by examining the transferability, by contract or otherwise, of CERCLA liability.

## II.

### Analysis

A. The Transfer of CERCLA Liability.

Valley Gas argues that the divestiture agreement between Valley and BVG & E precludes the transfer of CERCLA liability. In *John S. Boyd Co. v. Boston Gas Co.*, 992 F.2d 401 (1st Cir.1993), the First Circuit examined the transfer of CERCLA liability in the context of the doctrine of successor liability. Looking to Massachusetts law for the substantive rule of decision, the court held that CERCLA liability would not be transferred by contract without language in the agreement "broad enough to allow [the court] to say that the parties intended to transfer either contingent environmental liability, or all liability." *Boyd*, 992 F.2d at 406.

Applying the *Boyd* standard to this case, it is clear that the agreements in question demonstrate no intent to transfer contingent environmental liability. As well, the agreements contain no general transfer of liability. In fact, the contract expressly limits Valley's assumptions of liability to specific items ref-

1. The Commonwealth's suit has produced two other reported opinions: *Massachusetts v. Blackstone Valley Elec. Co.*, 777 F.Supp. 1036 (D.Mass. 1991) (finding waste at the site to be a hazardous substance within the meaning of CERCLA); *Massachusetts v. Blackstone Valley Elec. Co.*, 808 F.Supp. 912 (D.Mass.1992) (summary judgment for the Commonwealth on all remaining issues of liability).

2. The agreements between Valley Gas and BVG & E contain the following identical language:

III. Valley hereby assumes and hereby covenants and agrees with the Company to pay, perform and discharge such liabilities, and only such liabilities, as are reflected on the books of the Company. . . .

The Company covenants and agrees to indemnify Valley and its directors, officers and stockholders against, and to hold them harmless from, and all liabilities . . . with respect to any and all debts, obligations, contracts and liabilities of the Company not assumed by Valley hereunder.

erenced in BVG & E's books.[3] If the court were to look only at the agreement between the parties in determining the scope of liability assumed by Valley, it would conclude that Valley never assumed any of BVG & E's environmental liabilities.

*Boyd* defines the conditions in which CERCLA liability may be transferred by agreement. It does not, however, hold that CERCLA liability may be transferred *only* by agreement. BVE properly notes that the agreement to assume liability discussed in *Boyd* is merely one of several ways for a buyer to assume the liabilities of a seller. In this respect, the First Circuit in *Boyd* noted:

> In *Dayton v. Peck, Stow and Wilcox Co.*, 739 F.2d 690, 692 (1st Cir.1984), we identified four situations in which successor liability is appropriate: when the buyer agrees to assume liability; when a consolidation or de facto merger occurs; when the buyer is merely a continuation of the seller; and when the transaction is a fraud to escape liability.

*Boyd,* 992 F.2d at 408.

Recognizing that the First Circuit's decision in *Boyd* precludes the contractual transfer of environmental liabilities in this case, BVE argues that Valley Gas' liability arises out Valley's continuation of BVG & E's gas business, independently of the agreements signed in 1961.

■ The interpretation of *Boyd* advanced by BVE limits a private party's ability to allocate environmental liability by contract. A successor business that acts as a "mere continuation" of a predecessor will inherit environmental liabilities despite explicit contractual provisions to the contrary. This conclusion is in keeping with the principle, underlined in *Boyd,* that although parties may "allocate responsibility among themselves by contract," a party cannot "escape liability by means of a contract with another party." *Boyd,* 992 F.2d at 405. *See Fisher*

*Dev. Co. v. Boise Cascade Corp.,* 37 F.3d 104, 108 (3rd Cir., 1994).

The doctrine of "mere continuation" has been unanimously embraced in the CERCLA context. Courts have generally held that the "mere continuation" theory advances CERCLA's purpose of obtaining rapid recovery from "those responsible for problems caused by the disposal of chemical poisons." *Boyd,* 992 F.2d at 405. State contact law that allowed a responsible party to escape liability by way of merger or consolidation could frustrate this Congressional objective. *Smith Land & Improvement Corp. v. Celotex Corp.,* 851 F.2d 86, 92 (3rd Cir.1988), *cert. denied,* 488 U.S. 1029, 109 S.Ct. 837, 102 L.Ed.2d 969 (1989). The court accordingly finds that CERCLA liability can run to a corporate successor despite contractual provisions to the contrary. The court will next determine whether Valley Gas was in fact a "mere continuation" of BVG & E's gas operations.

CERCLA itself does not mention the extent to which liability runs to successor corporations who carry on the business of their predecessors. Despite the absence of explicit statutory guidelines, courts have unanimously held that CERCLA liability runs to successor corporations. *See In re Acushnet River & New Bedford Harbor,* 712 F.Supp. 1010 (D.Mass.1989); *U.S. v. Mexico Feed and Seed Co.,* 980 F.2d 478, 486-7 (8th Cir. 1992); *Kleen Laundry & Dry Cleaning v. Total Waste Mgt.,* 817 F.Supp 225, 230 (D.N.H.1993) (listing cases).

■ Courts have identified eight factors to consider in determining whether there is "continuity of enterprise" sufficient to pin liability on the successor corporation.[4] These factors are:

(1) retention of the same employees;

(2) retention of the same supervisory personnel;

(3) retention of the same facilities in the same location;

---

3. There was, understandably in the context of the times, no mention of environmental liabilities in BVG & E's books.

4. Courts have generally eschewed state law of successor liability in favor of a federal standard gleaned from "general principles" of corporate

law. *See Acushnet River,* 712 F.Supp. at 1014 n. 4 (citing *Smith Land,* 851 F.2d at 92) (noting that if state rule law applied parties could arrange transaction under law of state that allowed them to restrict successor liability).

(4) production of the same product;

(5) retention of the same name;

(6) continuity of assets;

(7) continuity of general business operations; and

(8) whether the successor holds itself out as a continuation of the previous enterprise.

*Kleen Laundry & Dry Cleaning v. Total Waste Mgt.*, 817 F.Supp. 225 (D.N.H.1993).

Applying these factors to the case at hand, it is clear that BVE has alleged facts, supported by accompanying affidavits, sufficient to defeat a motion for summary judgment.[5] BVE's complaint alleges that Valley Gas retained the same employees, produced the same product, retained part of the same name and continued the operation that once belonged to BVG & E's manufactured gas division. BVE Complaint at ¶ 70. In an affidavit submitted in opposition to BVE's motion to dismiss, a vice president of BVE claims that between 1963 and 1970 Valley continued BVG & E operation with respect to the persons it employed, the services it provided, and the properties it owned. Affidavit of Richard M. Burns at ¶ 7.

The court finds BVE's allegations sufficient for the purposes of defeating Valley's motion for summary judgment with respect to the transfer of environmental liabilities from BVG & E to Valley Gas. The court now turns the effect of the 1961 indemnification agreement.

**B. the Indemnification Agreement**

Valley Gas argues that whatever liabilities passed to Valley in the 1961 reorganization, legal responsibility for these were passed back onto BVG & E by an indemnification agreement signed in 1961. According to Valley Gas, BVG & E's indemnification and hold harmless agreement should be interpreted to encompass any CERCLA liability that might have passed to Valley from BVG & E.

The framework for liability established by Congress clearly contemplates indemnification and hold harmless agreements. CERCLA § 107(e)(1) "expressly preserves agreements to insure, to hold harmless, or to indemnify a party held liable ..." *Mardan Corp. v. C.G.C. Music*, 804 F.2d 1454, 1458 (9th Cir.1986). Many courts, including the First Circuit, have described these agreements as "tangential" to the enforcement of CERCLA's liability provisions, and therefor entitled to enforcement. *Boyd*, 992 F.2d at 405. "Such agreements cannot alter or excuse the underlying liability, but can only change who ultimately pays that liability." *Mardan*, 804 F.2d at 1459.

■ The effect of an indemnification agreement on CERCLA liability is a matter of contract interpretation, and should be judged according to state law. *Boyd*, 992 F.2d at 406 (citing *Robertshaw Controls v. Watts Regulator*, 807 F.Supp. 144 (D.Me. 1992); *Mardan*, 804 F.2d at 1460 (9th Cir. 1986) ("state law should provide the general content of federal law on the validity of releases of claims for cost-recovery under CERCLA"). State law will therefore be applied to the extent that it does not conflict with the federal interests embodied in CERCLA. *Boyd*, 992 F.2d at 406 ("The majority of courts have turned to state contract law to provide the substantive rule, so long as it is not hostile to the federal interests animating CERCLA.").

■ This is not the first time this court has been asked to determine the effect of an indemnification agreement on CERCLA liability under the law of Massachusetts.[6] In

---

**5.** In determining a motion for summary judgment, the court views the record "in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990).

**6.** A federal court exercising federal question jurisdiction should generally use federal choice-of-law rules to decide which state's law should determine the scope of the parties' indemnification agreement. *Pennzoil Company v. Federal Energy Regulatory Com.*, 645 F.2d 360, 387 (5th Cir.1981), *cert. denied, Pennzoil Co. v. Federal Energy Regulatory Com.*, 454 U.S. 1142, 102 S.Ct. 1000, 71 L.Ed.2d 293 (1982) (federal choice-of-law rules apply where jurisdiction is based on federal question); *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786, 795 (2d Cir.1980), *cert. denied*, 449 U.S. 1080, 101 S.Ct. 863, 66 L.Ed.2d 804 (1981) (*Klaxon* rule inapplicable in federal question case). *But cf., Sun Studs, Inc. v. Applied Theory Associates,*

*John Boyd Co. v. Boston Gas Co.,* 1992 WL 212231, 1992 U.S.Dist. LEXIS 13088 (D.Mass. Aug. 18, 1992), *aff'd, John Boyd Co. v. Boston Gas Co.,* 992 F.2d 401 (1st Cir. 1993), and again in *Steego Corp. v. Ravenal,* 830 F.Supp. 42 (D.Mass.1993), this court articulated criteria relevant to the scope of indemnification agreements in the CERCLA context. The following factors were considered in *Boyd:*

> whether any language dealt with CERCLA–type liabilities, whether the scope of the contractual language permitted an inference regarding assumption of future-arising liabilities, whether the agreement predated or post-dated CERCLA's enactment, whether clean up issues were addressed in the parties' negotiations, whether the parties knew of the presence of hazardous wastes on the site, and whether any separate consideration was paid for the release of liability.
>
> *Boyd,* 1992 WL 212231 at *3 1992 U.S.Dist. LEXIS 13088 at *10–11 (citing *Mardan Corp,* 804 F.2d at 1462).

Applying these criteria to the present agreement, the court finds that Valley Gas has not met its burden of establishing that, as a matter of law, the indemnification agreement between Valley and BVG & E extended to CERCLA liability.

The indemnification agreement, which pre-dated CERCLA's enactment, makes no mention of "CERCLA-type" liabilities, and allows no inferences with respect to future arising contingent liabilities. There is no evidence that the parties considered clean-up issues in their negotiations, much less that the parties considered the Mendon Road site in particular. Affidavits submitted by both parties suggest that the agreements in question were signed without contemplation of possible environmental liabilities. Affidavit of Charles H. Goss at ¶ 13; Burns Affidavit at ¶ 6. On the basis of the foregoing, the court is unable to conclude that the parties considered future contingent environmental liabilities in the their dealings. On the basis of the

pleadings, the agreements, and affidavits submitted by the parties, the court finds that the indemnification agreement between Valley and BVE cannot be construed to include contingent environmental liabilities.

### III.

### *CONCLUSION*

In conclusion, the court finds that Valley Gas has failed to establish that it never assumed environmental liabilities from BVG & E. The court also finds that Valley has not established that BVG & E agreed to indemnify Valley for any environmental liabilities assumed. Valley Gas's Motion for Summary Judgment is accordingly denied.

### ORDER

For the reasons stated in the accompanying memorandum, the Valley Gas Company's Motion to Dismiss and/or for Summary Judgment is hereby denied.

IT IS SO ORDERED.

---

*Inc.,* 772 F.2d 1557, 1561 (Fed.Cir.1985) (nature of legal issue, not source of jurisdiction, controls choice-of-law analysis).

Because there is no conflict among the relevant aspects of Massachusetts and Rhode Island

law, the court finds it unnecessary to conduct a detailed choice-of-law analysis, and will apply Massachusetts law in determining the scope of the indemnification agreement.